## COX *v.* STRICKLAND *et al.*

1. A set of resolutions, adopted at a public meeting of citizens in a given county, signed by persons participating therein, and declaring that in their opinion a named person "is, either directly or indirectly, connected with" the perpetration of "a clandestine burning of property," meaning a particular act of arson in that county, "because of [his] having been accused of numerous cases of like character in [another county] from whence he came," in effect charges the person referred to with having committed the crime of arson in both counties; and where the petition in an action of libel, predicated upon the publication of such resolutions in a newspaper, by appropriate innuendoes avers that it was the true intention and purpose of the defendants to so charge the plaintiff, it is incumbent upon them to meet the case thus made.

2. An answer in such case, admitting the signing and publication of the resolutions and that the defendants thereby "meant and intended to charge that the said plaintiff was, either directly or indirectly, connected with" the particular act of arson, and alleging that "the circumstantial evidence in the case which was the basis of said resolutions, and other evidence, justified the opinion so formed and expressed in said resolutions, and which they stand ready to prove in justification of the same," was, in substance, a plea of justification as to this specific charge.

(*a*) The answer filed in the present case, taken as a whole, also amounted to a plea of justification as to the charge imputing to the plaintiff guilt of arson in the county from which it was alleged he had removed, and should either have been so treated, or else the special demurrers to those portions of the answer practically alleging the truth of this charge but at the same time attempting to avoid justifying as to it, ought to have been sustained.

(*b*) As the court, in its instructions to the jury, evidently did not thus treat the answer, but limited the justification set up by the defendants to the specific charge of arson above referred to, it was, in this view, erroneous to allow the defendants to open and conclude; for justification as to any part of libelous matter less than the whole does not entitle defendants in such cases to this privilege.

3. Publishing that another had frequently been accused of the crime of arson in one county, and in the publication adopting this accusation as the basis of charging him with having committed this crime in another county, can be justified only by proof of the truth of such accusations. It is not enough to show that rumors charged him with such an offense in the county first indicated, but it must be shown that he was actually guilty therein as charged, or else a plea of justification filed in resistance to an action for libel in such a case is not sustained.

4. The truth of the charge made may always be proved in justification of the libel or slander. Civil Code, §3839. This is true independently of the time when a knowledge of the truth came to the defendant.

5. The filing of a plea of justification in defense to an action for libel puts the plaintiff's character in issue, and the defendant has the right to show that the plaintiff's general character is bad, but can not, in so doing, go

into proof of special acts, or resort to general rumors by hearsay. The plaintiff, under the general rule, has the right, on cross-examination, to go into special facts to ascertain the nature and extent of the knowledge of the witness. Where a plaintiff's character is in issue, he has a right to sustain it by proof of his general good character, if he can.

6. In all actions for printed or spoken defamation, malice is inferred from the character of the charge. Such an inference may be rebutted, and proof establishing absence of malice will go in mitigation of damages; or in cases of privileged communications, will be in bar of recovery. Malice is presumed where the printed language charges the plaintiff with a felony; and in such case the action can not be wholly defeated by evidence negativing malice.

7. In a case where a publisher of a newspaper inserted libelous matter solely for. pecuniary compensation, and where it appears that the only object sought to be accomplished was the public defamation of the plaintiff, such publisher can not justify on the ground that such matter was inserted as an advertisement. This would be in aggravation rather than in mitigation of damages, when a felony is charged and the publication is not justified on the ground of its being an item of legitimate news printed as privileged matter.

8. Omitting reference to well-settled legal questions, the foregoing notes cover substantially the points presented by the present record; and, in so far as the rulings, charges and decisions complained of are at variance with what is here laid down, the trial court committed error. There should be a new trial, and it should be conducted in the light of the principles above announced.

Submitted December 3, 1896. — Decided August 10, 1897, by Simmons, C. J., Lumpkin, J., and Judge Gober presiding in the place of Atkinson, J., disqualified.

Action of libel. Before Leon A. Wilson, judge pro hac vice. Clinch superior court. April term, 1896.

Horace Cox sued Powell, Strickland, the Valdosta Times Publishing Company, and many others, for publishing in the Valdosta Times, of and concerning him, certain resolutions in which, among other things, it was stated that at a meeting of citizens of a certain district of Clinch county, a committee appointed to draft suitable resolutions reported that there had been a clandestine burning of property in that district; that the citizens were firmly of the opinion that Cox was either directly or indirectly connected with it, because of his having been accused of numerous cases of like nature in the vicinity of Milltown, Berrien county, whence he came, and because of circumstantial evidence being so strong against him in the present case; that it was respectfully asked that R. S. Thigpen remove said Cox from his premises, the presence of Cox being

detrimental and obnoxious to said citizens in the highest degree; that the Valdosta Times be furnished with a copy of the resolutions, together with the names of the citizens signing the same, with a request that the same be published in that paper, etc. These resolutions were adopted by the meeting and signed by a large number of persons.

Defendants pleaded not guilty. By the second paragraph of their plea they denied that they injured petitioner by falsely and maliciously publishing the resolutions set out in the petition. They admitted signing the resolutions and the publication of the same, "but the charges set out in the resolutions, and so expressed in them, were expressions of opinion by the defendants signing the same, and which were formed by them and so expressed in them upon circumstantial evidence"; and when they were so signed and published, each of defendants was entirely free from all malice and ill-will towards plaintiff, and their feelings were so expressed in the resolutions, and the resolutions as signed and published have not damaged petitioner in any amount, and were published as an advertisement for a valuable consideration by the Valdosta Times. The sixth paragraph of the plea sets up, that the language employed in the resolutions does not charge petitioner with arson, and there is only an expression of an opinion, and the same is not a false and malicious defamation, etc. The seventh paragraph says, that in the resolutions referred to defendants meant and intended to charge that plaintiff was either directly or indirectly connected with the burning of J. B. Strickland's gin and millhouse, which was burned on the night of June 15, 1894, and they say that the circumstantial evidence in the case, which was the basis of said resolutions, and other evidence, justified the opinion so formed and expressed in said resolutions, and which they stand ready to prove in justification of the same. They deny that the same is a false and malicious defamation, tending to injure plaintiff's reputation, etc. The eighth paragraph of the plea is, while it is true that the resolutions declare that plaintiff was accused of numerous cases of like nature in Milltown, defendants never charged that he was guilty of or connected with any burning at said places mentioned, and

while one of said accusations referred to was the burning of Bank's mill of Milltown, defendants never charged that he was guilty of or connected with the burning of Bank's mill, and deny that they attempted to create the impression that he was guilty of arson in connection with the burning of Bank's mill; but they do say that, as charged in said resolutions, plaintiff was accused of numerous cases of like nature in the vicinity of Milltown. By the ninth paragraph they deny that the publication of said resolution has greatly damaged plaintiff in his business and that he was doing a prosperous business before the publication of the same.

Plaintiff demurred to the part of the second paragraph of the plea within quotation-marks, because defendants' expression of opinion of plaintiff's guilt of the crimes as set out in his declaration amounted in law to a direct charge of his guilt, and no amount of circumstantial evidence of his guilt, unless specifically pleaded in justification of the same, constitutes a valid legal defense. To the seventh paragraph, because it does not charge the truth of the publication as set out in the declaration, and express a determination to prove its truth, but simply seeks to justify an opinion formed by defendants, and to prove as true the fact that defendants were justified in entertaining said opinion. To the eighth paragraph, upon the ground that defendants are liable to plaintiff for the publication of slanderous rumors regarding him, and the fact that he was accused of having committed the offenses charged is neither justification nor palliation of the publication of the same by defendants. The demurrers were overruled, and plaintiff excepted. There was a verdict in favor of defendants; and plaintiff's motion for a new trial having been overruled, he excepted. The motion was upon the general grounds; and it further alleged that the court erred:

In holding that the plea constituted a plea of justification, and entitled defendants to open and conclude the argument.

In allowing S. L. Lewis to testify: "From the talk of the people in that neighborhood, I do not think that his character was very good; he was alleged to have burned two or three houses over there, and accusations were brought against him."

This was admitted over the following objections: (1) That evidence in chief of plaintiff's bad character was not admissible under a plea of justification. (2) That the basis of witness's knowledge of Cox's character was reports of guilt of particular crimes. (3) That evidence not directly tending to prove the guilt of the crime charged was not admissible under a plea of justification, even in mitigation of damages. (4) That, even in order for such evidence to be admissible in mitigation of damages, it must be shown to have been known to the defendants at the time of signing and publishing the resolutions. (5) That rumors or reports of specific offenses of plaintiff were not admissible either in mitigation of damages or as evidence tending to show the bad character of the plaintiff.

In permitting J. T. Asbury to testify, over similar objections: "Have known Cox for 12 or 14 years; his general character in the neighborhood where I live is a little sort of bad; he was accused of burning houses in Milltown; he was accused of burning Bank's gin, about a mile and a quarter from Milltown, and there was some talk that he was accused of burning the building of DeLoaches."

In refusing to rule out testimony of Studstill, as follows: "I have known Horace Cox since he was quite small. I do not know that I ever knew his general character there when I lived in that neighborhood, but I have heard a great deal of talk about him; he was accused of burning Bank's mill there; he was tried for it and came clear; he was tried for burning Bank's mill-house. I went on his bond in that case. I do not know of my own knowledge of anything against his character; it is just hearsay." The motion to rule out was upon like grounds as in the objections before stated.

In permitting defendant J. B. Strickland to testify, over like objections: "I have known Horace Cox a good many years. Cox's general character in the neighborhood where he lived before he moved to his present place was pretty bad."

In allowing defendant C. R. Pendleton to testify, in answer to the following question of defendant's counsel: "State to the jury the circumstances under which you published these resolutions? A. I received from the mail the resolutions pub-

lished in the Times. I do not think I had ever heard of the burning up to that time. When I received the resolutions I read them and read the names signed, and recognized a large number of citizens whom I knew well; being of a personal nature I inserted them as an advertisement, as is the custom with newspapers, and made a charge for same; that is the extent of my connection with the affair. I had no knowledge whatever as to the truth or untruth of the charges. I only knew the men making the charges, and probably would have thrown the resolutions in the waste-basket if I had not known the men. I did not attend the meeting and knew nothing about the charges. The fact that the publication was inserted as advertising matter, among newspapers, indicates that it is not news matter and is not editorial matter, and indicates that it is the advertiser who is talking and not the newspaper man." This was objected to on the grounds, that it was not relevant in support of the plea of justification of file in the case; and that it went in mitigation of damages against only one of numerous joint defendants.

In permitting defendant John King to testify as to a conversation between himself and one Burkhalter, in which conversation Burkhalter offered to procure for defendants a witness who would swear anything they desired him to swear. This was objected to as irrelevant, and as not in impeachment of the evidence of any of the plaintiff's witnesses, and if so in impeachment, as contradictory of evidence brought out in the cross-examination by defendant's counsel.

In charging the jury: "The plaintiff in this case, Horace Cox, brings his action against J. W. Powell and others named in the declaration, alleging that he has been damaged in the sum of $50,000, by reason of certain alleged false and defamatory publications of and concerning him, contained in certain resolutions published in the Valdosta Times, which you will find referred to in the declaration, which you will have out before you. In an amendment to the declaration he alleges that certain language used by the defendants in the preamble to said resolutions, intended to convey the impression that the plaintiff had been guilty of similar crimes in and about the

town of Milltown. To the original declaration the defendants, by their plea, say that they have not injured and damaged the plaintiff in the sum of $50,000, or in any sum whatever, by publishing in the Valdosta Times the resolutions set out in the petition. They further say that said resolutions were not falsely and maliciously published, as charged by the plaintiff in said petition. They admit the signing of the resolutions and their publication in the Valdosta Times, and say that the charges set out in said resolutions, and so expressed in them, were expressions of opinion by the said defendants signing the same, which were formed by them, and so expressed, upon circumstantial evidence, and that when the same were signed and published by the defendants, they and each of them were entirely free from malice or ill-will, and that said resolutions as signed and published have not damaged plaintiff in any sum whatever; they further say that the resolutions were published as an advertisement for a valuable consideration by the Valdosta Times. To the declaration as amended the defendants filed what is known as a plea of justification, in which they state that in the preamble of said resolutions they meant and intended to charge that the said Horace Cox was either directly or indirectly connected with the burning of J. B. Strickland's gin-house, which was burned on the night of June 15, 1894, and they say that the circumstantial evidence in the case, which was the basis of said resolutions, and other evidence, justified them in the opinion so formed and expressed in said resolutions, and which they stand ready to prove in justification of the same. The defendants deny that said resolutions are a false and malicious defamation of the plaintiff, tending to injure his reputation and expose him to public hatred, contempt and ridicule. Defendants say further, that it is true that the resolutions declare that the plaintiff was accused of numerous cases of like nature in the vicinity of Milltown in the county of Berrien, from whence he came, but they did not say that he was guilty of any burning at any of the places mentioned, and that they never charged that he was guilty of or connected with the burning of said Bank's mill, and that it is so stated in said resolutions that the said Cox was accused

of numerous cases of like nature in the vicinity of Milltown, in Berrien county. This makes the issue which you are to decide from the opinion you entertain of the evidence, and the law as given you in charge by the court."

In not informing the jury what was necessary to be proved by defendants to support a plea of justification.

In charging: "In a case of this kind, where a plaintiff brings an action for libel, he puts his character in issue. He challenges any one to attack his character. In a case where the defendant files a plea of justification he puts the character of the plaintiff in issue. The law presumes that the plaintiff is a man of good character, and it is incumbent upon defendants to show that he is not a man of good character. Whether he has been shown to be a man of good or bad character you will determine alone from the evidence."

In charging that a witness may be impeached by proof of bad character. There had been no effort to impeach the testimony of any witness by proof of bad character; and this charge was specially hurtful to plaintiff's case, because there had been admitted evidence tending to show the bad character of the plaintiff, which was not introduced nor admitted for the purpose of impeaching his testimony, but solely in mitigation of damages.

In charging: "It is not necessary, in order to sustain a plea of justification, to introduce that amount and character of evidence that would be necessary to convict a person if he were being tried for the offense charged under an indictment. In cases of libel, where the plaintiff brings an action for damages, the rule is, that the jury may determine the issue, as to whether or not the plea of justification is true, by a preponderance of the testimony." The use of the words "character of evidence" in effect instructed the jury that they could consider, in passing upon the plea of justification, evidence which would not be admissible in the trial of a criminal case.

In charging: "If there are conflicts in the testimony, it is the duty of the jury to reconcile these conflicts, the one with the other. You may take into consideration the manner of the witness while testifying, his character, his means of knowing

the facts about which he testifies, his frankness or want of candor, his interest, his relationship." No evidence was introduced for the purpose of showing the character of any witness testifying, and any consideration of the character of the witness testifying must have been taken by the jury from their own knowledge of his character, which is not permitted to the jury to consider.

In charging: "It is alleged, in the amendment to the original declaration, that the words used in the preamble to these resolutions by the defendants intended to convey the impression that the plaintiff in this case had been guilty of similar crimes at Milltown. You will examine the resolutions and say whether or not, in your opinion, from reading them, in the light of all the facts and circumstances of the case, the words which say that the plaintiff was accused of numerous like crimes in the vicinity of Milltown, would, to the mind of a reasonable man, convey the impression that the defendants intended to charge that the plaintiff was guilty of numerous crimes of arson in the vicinity of Milltown, and if after such investigation you should believe that such was the intention of the defendants, and you should further find against the plea of justification in this case, then you would be authorized to take into consideration such fact, if you find such to be a fact, in deciding what amount you will allow the plaintiff as damages under the rules of law given you in charge by the court." The jury were here instructed to pass upon and ascertain whether or not the defendants "intended" to charge the plaintiff with numerous crimes of arson, when the question at issue was, what was the natural and reasonable import and meaning of the words used, irrespective of the intention of the defendants in using them. Because the plea of justification only went to the length of justifying the charge of the burning of the house in Clinch county; while the charge, in effect, told the jury that should they believe that the defendants had charged the plaintiff in the case with similar crimes at Milltown, the proof of burning the house in Clinch county would justify the charge of guilt as regards the burning of the house in Milltown. And the jury were required, as a condition precedent to pass-

ing upon this issue, to find that the plea of justification had not been sustained, and the effect of this further charge of crime was confined solely to an aggravation of damages.

In refusing to charge, as requested:

"In order to find in favor of the defendants in this case, the jury must find from the evidence that the plaintiff, Horace Cox, either burned or was concerned in the burning of the gin-house of J. B. Strickland, in the county of Clinch; and in considering whether or not the evidence supports this charge, the jury is not authorized to consider any evidence which may have been introduced upon the trial of this case as to rumors or reports of said Cox having been guilty of the crime of arson in Berrien county.

"The jury, if they find that the plea of justification has not been sustained, that the evidence is not sufficient to convince them that the said Horace Cox burned the said Strickland's gin-house, then they must find in favor of the plaintiff; but the amount of the verdict which they may find in such case may be mitigated by any evidence submitted to them from which they believe that the defendants, at the time of the publication of these resolutions, had reasonable evidence or reasonable ground of suspicion of the truth of the charge of arson made in the resolutions. In the consideration of this question the jury can not consider any evidence introduced in their hearing which was not known to the defendants at the time of the adoption and publication of the resolutions complained of.

"Should the jury find that no sufficient evidence has been presented in their hearing, in their opinion, to mitigate the damages, then it would be their duty to find that the plaintiff in this case had been injured by the attempt made in the plea of justification to prove him guilty of the crime charged; and in that view they would be authorized to increase the damages which they might find against the defendants.

"It is the duty of the jury, under the law, to read these resolutions, and to say whether or not, in their opinion, from a reading of them, the words which say that Horace Cox was accused of numerous like crimes in the vicinity of Milltown, to the mind of a reasonable man convey the impression that

these defendants meant to charge that the said Horace Cox was guilty of numerous crimes of arson in the vicinity of Milltown; and if, after such investigation, they should believe that they did so mean to charge, the jury must find in favor of the plaintiff, notwithstanding the fact that they may have found that the evidence was sufficient to convince them that Horace Cox had burned the gin of J. B. Strickland."

*Calvin M. Hitch* and *Hitch & Myers*, for plaintiff.

*W. G. Brantley* and *Denmark & Ashley*, for defendants.

GOBER, J. The official report states the facts.

1. The contention of the defendants, in insisting upon their plea in the present form, embodies two postulates: First, that the defendants have the right to say in a publication concerning the plaintiff, that he was accused of numerous cases of arson in another county whence he had come. It does not appear that this accusation had ever been more than floating slander; these defendants take up what might have been harmless, and, through a newspaper, send it broadcast to the world. To yield this contention is to give up all the law of libel. If it is to be conceded that a newspaper can wholesale slanders and set up their previous circulation as a defense, then whatever protection there is to character from the assaults of the libeller is gone. The reasons to the contrary are primary and obvious. Second, it is contended that the plaintiff is either directly or indirectly connected with the burning of property, because of his having been accused of numerous cases of like character in another county. Stated as a syllogism, we have: There has been a burning of property in Clinch county; Cox was accused of numerous cases of like character in Berrien county; therefore, Cox burned the property in Clinch county. The tyro could point out the fallacy; such reasoning is not only faulty, but it is dangerous.

2. As to the justification, section 3891 is as follows: "In every case of tort, if the defendant was authorized by law to do the act complained of, he may plead the same as a justification; by such plea he admits the act to be done, and shall be entitled to all the privileges of one holding the affirmative ·

of the issue; but such plea shall not give to the defendant the right to open and conclude the argument before the jury, unless it is filed before the plaintiff submits any evidence to the jury trying the case." A plea of justification to a declaration containing several counts, each laying actionable words, goes to the whole declaration, unless the plea is restricted in its terms to certain parts or certain counts; and such plea waives the general issue. No amount of evidence going to negative malice will wholly defeat the action under a plea of justification, the words being actionable per se and not privileged. Nothing short of proving the truth of the plea will suffice. *Henderson* v. *Fox*, 83 *Ga.* 233. If a material part of a plea of justification fails, the plea fails altogether. Where the charge was that the plaintiff had acted for spite *and lucre,* the defendant justified, but his justification failed as to lucre; *held* that the charge being *entire,* the plaintiff was entitled to a verdict; and where a part only of a *divisible* charge is justified, the defendant is liable for the part not justified. Townshend on Slander and Libel, § 359, p. 602. On the same principle it is held, in an action on the charge of stealing hogs, it is not a good plea that the plaintiff had stolen one hog. Swann *v.* Rarie, 3 Blackf. (Ind.) 293.

3. A newspaper is not privileged in its publications, but it is liable for what it publishes, in the same manner as any individual. (Campbell *v.* Spottiswoode, 8 Law Times (N. S.), 201; Davison *v.* Duncan, 7 El. & Bl. (King's Bench), 231; Sheckell *v.* Jackson, 10 Cush. 26; State *v.* Banner Publishing Co., 22 The Reporter, 445.) Townshend on Slander and Libel, 447. The publication of defamatory matter is not privileged because published in the form of an advertisement, or as news, or because furnished by a correspondent, or is copied from other papers. (Robertson *v.* Bennett, 44 N. Y. Superior Court Rep. 66; Perrell *v.* New Orleans Times, 25 La. Ann. Rep. 170; Harrison *v.* Pirree, 1 Fost. & F. 567; Thompson *v.* Powing, 15 Nev. 195; Mallory *v.* Pioneer Press Co., 34 Minn. 521; Bathrick *v.* Post and Tribune Co., 50 Mich. 629.) Townshend on Slander and Libel, 448.

The right to publish through the newspaper press such mat-

ters of interest as may be properly laid before the public does not go to the extent of allowing the publication concerning a person of false and defamatory matter, there being no other reason or justification for so doing than the mere publication of the news. But false assertions, when they impute the commission of crime, are actionable; and when not based upon any facts legally tending to prove the crime imputed, the publication can not be said to be privileged. It will not do to say that such a publication was made with reasonable care, however good the motive may have been. Newell on Defamation, Slander and Libel, p. 591, § 37.

In popular belief, one man can publish of another what he sees fit, if, by bluff or otherwise, he can avoid any personal consequences on account of such act; the party aggrieved must either submit or go gunning for the publisher, in order to retain his place in public estimation as a man of honor. Generally the libeller is not in evidence; his work is done behind the scene; you can not always know his motive. Upon the surface he is the embodiment of fairness—of patriotism—yea, sometimes his religious views almost deter him from the work he is about, but, patriot as he is, he will do the public a service, and often he strikes a better man than he is—a cowardly blow though it be. Character is defined by Webster to be peculiar qualities impressed by nature or habit on a person, which distinguish him from others. The libeller would strip him of these. He wishes him to appear, not in his true character, but in a fictitious one—a character that he would give him. We can understand why a thief would steal—he is after gain; so forgery is committed, and other crimes; but from a moral standpoint a man who would destroy character must be ranked along with the felon who commits arson—he can not hope to profit by it; he can not appropriate that of which he deprives another. Character ought to be protected; the law ought to be enforced to protect it. I could not do better than quote just here from the preface to the letters of Junius: "If the characters of private men are assailed or injured, a double remedy is open to them by action and indictment; if through indolence, false shame, or indifference, they will not appeal to the laws of their

country, they fail in their duty to society, and are unjust to themselves; if, from an unwarrantable distrust of the integrity of juries, they would wish to obtain justice by any mode of procedure more summary than a trial by their peers, I do not scruple to affirm, that they are in effect greater enemies to themselves than the libeller they prosecute."

A newspaper is a great power. There will doubtless appear no greater factor in the progress and development of our common country. Some men owe to the press the respect they exhibit for religion and morality; they fear its lash. The newspaper should discriminate; upon its lofty pedestal it should command respect for its high-toned thought, its justice, its conservatism and its moderation. The press should be free; it should not be deterred from its legitimate work. It leads thought; it moulds public opinion; it thinks for the people. Some men have illustrated this great calling; they have appreciated its duties and obligations; they have lent an ear to the right; their endeavors have kept time to the needs and necessities of the great millions who exemplify the virtue, religion and morality of this country. The man that sits in this high place, athirst for greed and gain; whose opinions depend upon the amount of money he gets in his wallet; who attacks private character when he is paid to do so, is an usurper and a public enemy. As well might Judas Iscariot exhibit the price of his perfidy as an excuse for his crime, as for a libeller to set up that he published the libel complained of for money. If this plaintiff is guilty of the acts published against him, these defendants had a right to publish them, and they did a public service in doing so. On the contrary, if he is not guilty, and if it is an effort to defame and degrade him, the law should not withhold its vindication.

It is not intended to say how this case should be finally determined. Let it be presented to the jury under these rules, and let the truth prevail.

*Judgment reversed.*