60038. MORTON v. GARDNER et al.

QUILLIAN, Presiding Judge.
This is an action sounding in libel, arising from allegations of improper medical practice against Dr. Morton — the plaintiff, by members of the Grady County Medical Society — Doctors Gardner, Palen, and Bihl. Plaintiff appeals from the grant of summary judgment to Doctors Gardner and Palen. Bihl was dismissed as a defendant in this action.

This is the fifth appeal arising from this incident. See *Morton v. Skrine* and *Stewart v. Morton,* 242 Ga. 844 (252 SE2d 408); *Morton v. Gardner,* 242 Ga. 852 (252 SE2d 413); *Morton v. Stewart,* 153 Ga. App. 636 (266 SE2d 230).

Dr. Morton was a member of the Georgia Composite State Board of Medical Examiners (Board). Prior to his appointment to the Board he practiced medicine in Grady County. After his appointment several members of the Grady County Medical Society (Medical Society) were investigated by the Board. The Grady County doctors were of the opinion that Dr. Morton may have been the instigator of those investigations. The Medical Society was originally formed in 1975 by Doctors Bihl, Gardner, Palen, Lonkani, Singleton and Bailey. On or about June 3, 1976, with only Bihl, Gardner and Palen in attendance, the President, Vice-President and Secretary respectively, the Medical Society composed a letter to the

Board requesting an investigation of "complaints pertaining to the medical practice of" Dr. Morton. The letter carried the "stamp" signature of Dr. Bihl in his capacity as "President, Grady County Medical Society." Although defendants have included exhibits in their appellate brief explaining why the letter had a stamped signature, subsequent events involving the Board and the Medical Society, and submission of a second letter, this Court can not consider evidence contained in the brief. We will rely only upon the evidence of record. *Coweta Bonding Co. v. Carter,* 230 Ga. 585 (1) (198 SE2d 281); *Stone v. Ridgeway,* 136 Ga. App. 264 (2) (220 SE2d 722).

We have deduced from the evidence of record that Doctors Bihl, Gardner and Palen composed the letter from the Medical Society. When Gardner was ready to mail the letter, Bihl — the President of the Medical Society, was unavailable and his "stamp" signature was placed on the letter and it was forwarded to the Board. Bihl thereafter contacted the Board and withdrew his name from the letter. A "meeting" of the Medical Society was held with only Doctors Gardner and Palen in attendance and the letter was resubmitted to the Board — over the signature of Doctors Gardner and Palen — as "Vice-President" and "Secretary" of the Medical Society. The first letter from the Medical Board, dated June 3, 1976, is the only letter from the defendants referred to in the complaint. Dr. Bihl subsequently moved from the state and he has been stricken as a party defendant in this action.

Even though Bihl withdrew his name from the first letter sent to the Board from the Medical Society, thereafter he read the letter to a newspaper reporter over the phone and then provided him with a copy of the letter bearing his stamped signature — without the knowledge of either Drs. Gardner or Palen. The reporter spoke to Dr. Palen about the letter but did not go into the contents of the allegations attached to the letter. The evidence shows that *only* Dr. Bihl read the letter to the newspaper reporter, discussed the contents, and provided a copy of the original letter to the reporter.

Following extensive discovery, defendants moved for and were granted summary judgment. Plaintiff brings this appeal. *Held:*

1. The plaintiff's action was based upon: (1) libel: predicated upon the publication of the letter from the Medical Society to the Board, dated June 3, 1976, and further publication of that letter to a newspaper reporter; (2) conspiracy to commit libel: Count IV — based upon publication of the letter above; Count V — based upon publication of a letter to the Board from Ms. Rhea McCullough, an employee of Dr. Morton; Count VI — publication of a newspaper article and an editorial in the Atlanta Constitution and (3) malicious

use of privilege: by using a privileged communication — the letter of June 3, 1976, "as a cloak for venting private malice . . ."

2. We will address first the enumerations dealing with the counts alleging conspiracy to commit libel — Counts IV, V, and VI. Although the question of conspiracy has been held to be a question for the jury ( *Hodges v. Youmans,* 129 Ga. App. 481 (2) (200 SE2d 157)), "[a]s in other types of actions, issues predicated upon a claim or defense of conspiracy may be summarily adjudicated where there is no genuine issue of material fact." 6 Moore's Federal Practice (Part 2) 56-770, ¶ 56.17 [9]; First National Bank v. Cities Service Co., 391 U. S. 253, 288-289 (88 SC 1575, 20 LE2d 569). Enough facts or circumstances must be in evidence to necessitate submission of the issue to the jury. See *Clayton McLendon, Inc. v. Judge & Co.,* 142 Ga. App. 659, 661 (2) (236 SE2d 683).

3. Count VI alleged conspiracy to commit libel by publication of a newspaper article and an editorial in the Atlanta Constitution. *Morton v. Stewart,* 153 Ga. App. 636, supra, is dispositive of this portion of the enumerated errors. In that case we found — based on the same record — there was no malice, libel, conspiracy to libel, nor malicious use of privilege involved in the publication of the newspaper article or editorial.

4. We turn next to Count V — based upon a letter from Ms. Rhea McCullough — an employee of Dr. Morton, to the Board. Ms. McCullough stated that she alone was responsible for the letter and its contents and she never discussed it with either of the defendant doctors. The record is totally devoid of any evidence of conspiracy or concert of action between Ms. McCullough and either of the defendant doctors. Summary judgment was also proper as to this count.

5. Plaintiff's Count IV was based on publication of a letter dated June 3, 1976 from Doctors Bihl, Gardner and Palen to the Board. It is contended there were two libels — one when the doctors published the defamatory matter to the Board, and two — when the doctors republished the same defamatory matter to a newspaper reporter.

(a) It is admitted that Doctors Bihl, Gardner and Palen published the letter to the Board — under the claim of a conditional privilege. Defendant's allege that the plaintiff abandoned this portion of his action in the trial court. We agree.

The trial court found as a fact, and stated in its order, that plaintiff abandoned such allegation "in oral argument." The Supreme Court held that no part of the purloined Board file would be admissible in evidence. *Morton v. Gardner,* 242 Ga. 852, 856, supra. The plaintiff indicated in his brief to the trial court that he had

abandoned his contention of libel based on the June 3, 1976 letter to the Board "since the letter to the Board has been ruled inadmissible and cannot be considered ..." Such findings of fact of a trial judge will not be disturbed by an appellate court unless found to be clearly erroneous. Code Ann. § 81A-152 (CPA § 52; Ga. L. 1969, pp. 645, 646; 1970, pp. 170, 171). The trial court's finding of abandonment is supported by some evidence in the record, and we do not have a transcript of the "oral argument" in which the trial court concluded that plaintiff abandoned this ground. Lacking such transcript we must assume the trial court's finding was supported by the evidence. Cf. *Yalanzon v. Sharon Const. Co.,* 141 Ga. App. 294 (2) (233 SE2d 220); *Interstate Financial Corp. v. Appel,* 233 Ga. 649 (212 SE2d 821). *Glass v. Glass,* 242 Ga. 736 (251 SE2d 298).

Thus, as the conspiracy to commit libel count was based upon publication of the letter from Doctors Bihl, Gardner and Palen to the Board *and* to the newspaper reporter and the publication to the Board has been found to be abandoned, we need only address the issue of conspiracy as it relates to publication of the letter to the reporter.

(b) Doctors Gardner and Palen claimed the conditional privilege relating to the letters forwarded to the Board (Code Ann. § 84-916 (h) (Ga. L. 1913, pp. 101, 107; as amended through 1974, pp. 1156, 1162)) and established a prima facie right to such privilege. *Melton v. Bow,* 145 Ga. App. 272 (1) (243 SE2d 590). It was also established that neither Doctor Gardner nor Doctor Palen was aware of the publication of the letter to the newspaper reporter. Also, after the evidence pierced this allegation of the plaintiff, plaintiff failed to show any evidence of conspiracy to defame plaintiff by such publication, or any concert of action by Dr. Bihl with either of the other defendant doctors in such publication.

As we held in *Morton v. Stewart,* 153 Ga. App. 636, 643, supra, " '[u]ltimate or conclusory facts and conclusions of law ... cannot be utilized on a summary judgment motion. Similarly, the mere reargument of a party's case or the denial of an opponent's allegations will be disregarded.' [Cits.] Conclusory allegations by the plaintiff of conspiracy, malice, and defamation, are insufficient — in the absence of substantiating fact or circumstances, to raise a material issue for trial."

We have reviewed the voluminous evidence of record and found it devoid of any fact or circumstance tending to establish a conspiracy between Dr. Bihl and Doctors Gardner or Palen to publish the letter of the Medical Society to the newspaper reporter. Accordingly, the court did not err in granting summary judgment as to Count IV for the defendants. *Summer-Minter & Assoc. v. Giordano,* 228 Ga. 86, 90

(184 SE2d 152).

6. Plaintiff alleged that Doctors Bihl, Gardner and Palen, maliciously used a privileged communication — the letter to the Board, "as a cloak for venting private malice." Pretermitting the issue of whether plaintiff also abandoned this count, this letter was entitled to a conditional privilege under Code Ann. § 84-916 (h), supra, if "such report [was] made in good faith without fraud or malice." However, "if the privilege is used merely as a cloak for venting private malice, and not bona fide in promotion of the object for which the privilege is granted, the party defamed shall have a right of action." Code Ann. § 105-710 (Code § 105-710). "[P]roof that the communication as made was privileged will defeat recovery unless actual malice on the part of the defendant exists." *Van Gundy v. Wilson,* 84 Ga. App. 429, 433 (66 SE2d 93).

The principal rule of New York Times v. Sullivan, 376 U. S. 254 (84 SC 710, 11 LE2d 686) "that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' . . ." is inapplicable to the instant case. It is conceded that Dr. Morton is a public official, but the alleged defamatory matter does not relate to his "official conduct." See Restatement, Second, Torts 2d 216, § 580A (b). Neither were the allegations contained in the letter from the Medical Society related to acts of the plaintiff committed "in [his] public capacity." Code Ann. § 105-709 (6) (Code § 105-709 (6)). However, although the principal rule of New York Times v. Sullivan does not apply, other rules set forth therein are applicable.

(a) The defense of "privilege" in a libel action is one of "confession and avoidance." It admits the publication of the allegedly defamatory matter but asserts it was done on a privileged occasion and bona fide in promotion of the object for which the privilege was granted. *DeLoach v. Maurer,* 130 Ga. App. 824, 827 (204 SE2d 776); see generally 51 ALR2d 552, 554, 555, § 2. Plaintiff has alleged the communication of June 3, 1976 from the Medical Board to the State Board was "malicious use" of a privilege. Accordingly, express malice must be proven. Code Ann. § 105-710 (Code § 105-710). Although the burden is on the plaintiff at trial to prove actual malice, this is on motion for summary judgment and the movant defendant is obligated to "affirmatively negative the claim of the plaintiffs and show they are not entitled to recover under any theory of the case . . ." *Barry v. Cantrell,* 150 Ga. App. 439, 441 (258 SE2d 61).

Defendants moved for and supported their motion for summary judgment — showing occasion for the privilege, a claim of good faith,

verification of their entries in the letter and a lack of "actual malice" in the constitutional sense. See *Ivester v. Coe,* 33 Ga. App. 620 (3) (127 SE 790). Where the defendant is the movant and establishes the absence of a material issue for trial the plaintiff can not rest upon his allegations or denials, but his response must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond summary judgment would be appropriate for the defendants. Code Ann. § 81A-156 (e) (CPA § 56 (e); Ga. L. 1966, pp. 609, 660, as amended through 1975, pp. 757, 759.) It is the duty of each party at the hearing "on the motion for summary judgment to present his case in full." *Summer-Minter & Assoc. v. Giordano,* 231 Ga. 601, 604 (203 SE2d 173). "Actual malice" as defined by New York Times, supra, is "knowledge that [the defamatory matter] was false or [it was published] with reckless disregard of whether it was false or not." New York Times v. Sullivan, 376 U. S. 254, 280, supra. "And 'actual malice' under the New York Times case, supra, 376 U. S. 254, was made 'a constitutional issue to be decided initially by the trial judge vis-a-vis motions for summary judgment and directed verdict . . . "applying the *Times* test of actual knowledge or reckless disregard of the truth. Cf. Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). Unless the court finds, on the basis of pre-trial affidavits, depositions or other documentary evidence, that the plaintiff can prove actual malice in the *Times* sense, it should grant summary judgment for the defendant." ' " *Williams v. Trust Co. of Ga.,* 140 Ga. App. 49, 58 (230 SE2d 45).

Both doctors disclaimed any false or malicious motive for forwarding the letter to the Board. Each doctor stated that the letter was submitted in a capacity as an officer of the Medical Society — and not as an individual. One of the functions of the Society was to communicate with the Board which had "the duty, responsibility and power to conduct investigations which the [Grady County Medical] Society does not." The doctors testified that their motive for initiating the letter was solely "the quality of medical care" for the community and "in the interests of patient's health, interest and safety." The Medical Society felt "it would be remiss in its purpose of insuring quality medical treatment if these complaints were not investigated by the proper authority." The proper investigative authority was the Board. Code Ann. § 84-916 (d), supra.

Neither defendant doctor discussed the *contents* of the allegations in the letter with anyone except the Board and Dr. Bihl. Each defendant doctor discussed the fact that a letter had been sent to the Board but prior to that time this fact had been communicated to the reporters by Dr. James Dudley, President of the Board. One reporter testified that he also spoke to the Director of Investigations

for the Board "who confirmed that his office was investigating, currently investigating Dr. Morton, and he [the investigator] discussed in general terms the allegations that had been made. [The reporters] then went to see Mr. Cecil Clifton, [Executive Director of the] Medical Board, discussed the investigation with him [and] returned to the office. I called Dr. John H. Bihl who read to me a portion of the letter that had been sent to the Board . . ." The reporters were aware that two letters — from McCullough and the Medical Society had been sent to the Board concerning Dr. Morton. The reporter stated that "Dr. Dudley and Cecil Clifton both made reference to [both letters] . . . [W]e talked with Mr. Clifton *prior* to talking with Dr. Bihl . . ." (Emphasis supplied.) Thus, the sequence of events appears to be that Ms. McCullough sent a letter to the Board, then the Medical Society forwarded their two letters to the Board. Thereafter, the newspaper reporters called the Board and spoke to its President, then the Executive Secretary, before they spoke to either of the defendant doctors about the letters from the Medical Society. Furthermore, general discussion of the contents of the letters came from the President, Executive Secretary and chief investigating officer of the Board and not from the defendants. The defendants admitted they discussed the fact that a letter had been sent — but not its contents. Only Dr. Bihl read his letter to the reporter and sent a copy to him.

(b) Defendants carried their burden showing their prima facie claim of privilege and lack of "actual malice" in the constitutional sense — thus piercing the pleadings of the plaintiff as to this matter. Thereafter, the burden of proving "actual malice" was on the plaintiff. *Ivester v. Coe,* 33 Ga. App. 620 (2), supra; *Van Gundy v. Wilson,* 84 Ga. App. 429, 430 (1a), supra; *Cochran v. Sears, Roebuck & Co.,* 72 Ga. App. 458, 461 (1) (34 SE2d 296); *Edmonds v. Atlanta Newspapers,* 92 Ga. App. 15, 20 (2) (87 SE2d 415); *WSAV-TV v. Baxter,* 119 Ga. App. 185, 186 (166 SE2d 416); *Melton v. Bow,* 145 Ga. App. 272, supra, affd. 241 Ga. 629 (247 SE2d 100), U. S. cert. den. 439 U. S. 985; Restatement Second, Torts 2d 307, § 613 (h); Cf. New York Times v. Sullivan, 376 U. S. 254, 279, supra; 53 CJS 161, Libel & Slander, § 101. The plaintiff failed to carry its burden of showing malice. Thus, the trial court did not err in granting summary judgment to the defendants as to that count alleging abuse of a privileged communication.

7. The sole remaining issue is whether there is any evidence tending to establish that Doctors Gardner or Palen defamed Dr. Morton by publication of the letter from the Medical Society to the Board — dated June 3, 1976, or by the republication of that letter by Dr. Bihl alone — to the newspaper reporter. We find that Divisions 5

and 6 above are controlling as to this issue.

*Judgment affirmed. Shulman and Carley, JJ., concur.*

Argued June 16, 1980 — Decided September 8, 1980.

*Harry Jay Altman, II, Robert N. Meals, Edwin A. Carlisle,* for appellant.

*Del Percilla, William U. Norwood, Albert G. Norman, Jr., Bruce W. Kirbo, John E. Zamer,* for appellees.