75091. DIAMOND v. AMERICAN FAMILY CORPORATION et al.
75092. AMERICAN SAVANNAH BROADCASTING COMPANY
v. DIAMOND.
(368 SE2d 350)

POPE, Judge.

Plaintiff Diamond, a real estate broker, claims he was defamed by a television news broadcast by WTOC-TV, a Savannah television station. The facts show Diamond was instrumental in arranging a real estate transaction in which Hardee's restaurant purchased a tract of land on which to build a restaurant on Wilmington Island. Upon purchasing the land, Hardee's contracted to have it cleared in preparation for construction. In the process of clearing the tract the contractor also mistakenly removed from adjoining county property a stand of trees and other foliage which served as a natural buffer zone between the commercial area in which the restaurant was to be built and a nearby residential neighborhood. The improper clearing was the subject of heated local debate and was reported on the local news.

The first report concerning the controversy was broadcast on December 4, 1984. In preparing for a second broadcast on December 5, the reporter learned that Hardee's was investigating the possibility that it might have paid for land actually owned by the county. In the course of the December 5 broadcast, the reporter stated: "The county appears to be somewhat responsible, but the mistake apparently began months ago when this man, Bob Diamond, sold a bigger tract of land than his client actually owned. That's a mistake the restaurant people are sure to investigate." In actuality, the mistake was made when a surveyor hired by Hardee's placed surveying stakes ten feet over the actual property line onto land owned by the county. In a final broadcast on December 7, the reporter reported the surveyor's mistake and added that Hardee's was satisfied they had not paid for land not belonging to them.

Plaintiff Diamond filed this action for defamation against American Savannah Broadcasting Company and American Family Corporation, alleging they were the owners and operators of station WTOC-TV. Defendant American Family Corporation moved for summary judgment in reliance upon an affidavit by its chief operating officer attesting that it was a separate legal entity from American Savannah Broadcasting Company and that it did not own or operate the television station. Both defendants moved for summary judgment on the ground the objectionable report was conditionally privileged because it concerned a matter of public interest. Since the undisputed evi-

dence showed the statement was made with no actual malice or ill will, defendants argued the plaintiff could not prevail on this claim. The lower court granted summary judgment to American Family Corporation. It also granted partial summary judgment to American Savannah Broadcasting Company as to plaintiff's claim for punitive damages. However, summary judgment was denied as to plaintiff's claim for general or actual damages. Plaintiff Diamond appeals the grant of summary judgment to American Family Corporation and the grant of partial summary judgment to defendants concerning his claim for punitive damages (Case No. 75091). Defendant American Savannah Broadcasting Company cross-appeals the order denying its motion for summary judgment to plaintiff's claim as a whole (Case No. 75092).

## *Case No. 75092*

1. The trial court granted partial summary judgment to defendant American Savannah Broadcasting Company as to plaintiff Diamond's claim for punitive damages. However, the court denied summary judgment on the complaint as a whole and defendant appeals. Defendant claims the allegedly defamatory statements made in its broadcast were privileged because they pertained to a matter of general or public interest. According to defendant, under these circumstances a plaintiff in a defamation case may recover damages only if he proves the statements were made with actual malice. Because the undisputed evidence shows defendant entertained "no serious doubts" as to the truth of the statements in question, defendant argues it is entitled to judgment as a matter of law.

The evidence clearly establishes the broadcast in question concerned a matter of public interest. However, the evidence also shows plaintiff is a private individual and not a public figure. Therefore, the fact that the broadcast concerned a matter of public interest is not the determining factor for deciding whether actual malice must be shown in order for the individual to recover in a defamation action.

When a defamation action is brought by an individual against a member of the press, the court is faced with competing legal interests. On the one hand, the individual has a common law right to the protection of his own good name. On the other hand, the First Amendment of the United States Constitution guarantees freedom of speech and the press. Common law imposed strict liability for defamatory statements. However, "a rule of strict liability that compels a publisher or broadcaster to guarantee the accuracy of his factual assertions may lead to intolerable self-censorship." *Gertz v. Robert Welch, Inc.*, 418 U. S. 323, 340 (94 SC 2997, 41 LE2d 289) (1974). In balancing these two competing interests the United States Supreme Court

has long recognized a conditional privilege for statements made about either a private or public figure if those statements concerned the individual's involvement in an event of public or general interest. See, e.g., *Rosenbloom v. Metromedia*, 403 U. S. 29 (91 SC 1811, 29 LE2d 296) (1971); *New York Times Co. v. Sullivan*, 376 U. S. 254 (84 SC 710, 11 LE2d 686) (1964). Prior to the *Gertz* decision the privilege in favor of freedom of speech was so strong that when a statement concerned a matter of public interest, the individual could recover for defamation only if he could prove the statement was made with "actual malice," which is defined as knowledge of the statement's falsity or reckless disregard for the truth of the statement. *New York Times Co. v. Sullivan*, supra.

However, in *Gertz* the Supreme Court retreated from its earlier position and held, in effect, that the controlling factor in determining the standard of review for defamatory statements is not whether the statement relates to an issue of public or general concern but whether the remark was made about a private individual as opposed to a public official or figure. The court rejected the "public or general interest" standard for determining the applicability of the *New York Times* "actual malice" test to private defamation actions. Instead, the court stated: "[W]e conclude that the state interest in compensating injury to the reputation of private individuals requires that a different rule should obtain with respect to them." 418 U. S. at 343, supra. Therefore, the Supreme Court ruled there is no longer a constitutional requirement for a private individual to prove malice in order to recover for defamation. "We hold that, so long as they do not impose liability without fault, the states may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." Id. at 347. Statements made by the press about a private individual which concern a matter of public interest are still granted a conditional privilege to the extent that such statements are not subject to "strict liability" which might otherwise be imposed at common law. However, there is no longer a constitutional requirement that the individual must prove actual malice in order to recover.

In response to the relaxed standard announced by *Gertz*, the Georgia Supreme Court adopted the standard of the majority of states, i.e., ordinary care. *Triangle Publications v. Chumley*, 253 Ga. 179 (317 SE2d 534) (1984). The same standard which applies to publishers should also apply to broadcasters. Thus, whether a broadcaster practiced that degree of care required of a reasonable broadcaster under the circumstances is an issue for the jury. See *Triangle Publications v. Chumley*, supra at (1). A private individual need not prove a defamatory statement was made with actual malice. He or she may recover if the broadcaster failed to use ordinary care to determine the

truth or falsity of the statement.

Those cases in which this court has held a private individual must show actual malice in order to prevail on a claim for defamation were decided prior to *Gertz* and *Triangle Publications*. See *Montgomery v. Pacific &c. Co.*, 131 Ga. App. 712 (206 SE2d 631), aff'd on other grounds, 233 Ga. 175 (210 SE2d 714) (1974) (affirmed on the ground that the defense of justification, i.e., the truth of the statement involved in the defamacast, should be tried by a jury); *WSAV-TV v. Baxter*, 119 Ga. App. 185 (166 SE2d 416) (1969). To the extent these cases held that the qualified privilege for the reporting of matters of public concern may be defeated only by a showing of actual malice, they should be overruled. We need not overrule *Minton v. Thomson Newspapers*, 175 Ga. App. 525 (333 SE2d 913) (1985), which was decided subsequent to the announcement of the new standard by the United States Supreme Court in *Gertz*. In *Minton*, we properly applied the standard of ordinary care adopted by our own Supreme Court in *Triangle Publications*, supra, and ruled that the qualified privilege for publishing newsworthy stories must be exercised in good faith and pursuant to the standards of ordinary care.

It is true that the defamacast in this case is not granted a statutory privilege since a report on matters of public concern is not one of those categories covered by statute. See OCGA §§ 51-5-7 and 51-5-8. However, that does not mean there exists no constitutional privilege for publishing or broadcasting matters of public concern. Those concurring specially seem to recognize only those privileges granted by state statute. However, we cannot ignore that the United States Supreme Court still recognizes a qualified constitutional privilege for statements concerning matters of public concern, whether they are made in reference to private individuals or public figures. As noted above, those statements are privileged to the extent that the states may not impose strict liability for such statements, for to require absolute accuracy of all published statements would stifle the freedom of the press. See *Gertz v. Robert Welch, Inc.*, supra. Our opinion in *Minton* correctly recognized the privilege and correctly applied the ordinary care standard of review. It need not be overruled. The problem with *Montgomery v. Pacific &c. Co.*, supra, and *WSAV-TV v. Baxter*, supra, is not that they recognized a non-statutory privilege for reporting matters of public concern, for there exists such a privilege. The true reason these opinions should be overruled is that they applied the *wrong standard of review for liability* and erroneously held that the privilege may be defeated only by a showing of actual malice. By overruling those two earlier cases we simply clarify that actual malice is not required for the aggrieved party to recover for a defamacast.

In the case at hand, even though defendant presented uncontra-

dicted testimony that it had no actual knowledge that the broadcast in question contained false statements, defendant is not entitled to summary judgment. Pursuant to the standard announced in *Triangle Publications*, a broadcaster may be liable even for a newsworthy report if it contains a defamatory statement and the broadcaster failed to employ the procedures a reasonable broadcaster under the circumstances would have employed to assure the accuracy of the statement before broadcasting the report. An issue remains for jury determination whether defendant was negligent in broadcasting the admittedly false statements.

### Case No. 75091

2. Defendant American Family Corporation presented undisputed evidence that it was a separate legal entity from its co-defendant American Savannah Broadcasting Company and that it did not own or operate the television broadcasting station WTOC-TV. Therefore, summary judgment was properly granted to American Family.

3. Plaintiff Diamond also appeals from the grant of partial summary judgment to defendants as to his claim for punitive damages. As discussed in Division 1 of this opinion, the United States Supreme Court in *Gertz* permitted the states to define for themselves the appropriate standard of liability for defamation, so long as they did not impose liability without fault. Nevertheless, the guidelines set forth in *Gertz* prohibited recovery of punitive damages for defamation without a showing that the broadcaster or publisher possessed knowledge of the falsity of the defamatory statement or exercised reckless disregard for the truth. Although *Gertz* relaxed the standard of proof necessary for a plaintiff to recover actual damages for defamation, the evidence must still meet the more demanding standard of "actual malice," as set forth in *New York Times Co. v. Sullivan*, supra, in order to support a recovery of punitive damages. Therefore, the lower court properly granted partial summary judgment to defendants as to plaintiff's claim for punitive damages.

*Judgments affirmed. Banke, P. J., Sognier and Benham, JJ., concur. McMurray, P. J., and Beasley, J., concur in the judgment only. Birdsong, C. J., Deen, P. J., and Carley, J., concur specially.*

BIRDSONG, Chief Judge, concurring specially.

I concur specially with the majority opinion because I cannot concur with all that is said therein. Specifically, I cannot concur with the conclusion that "the United States Supreme Court has long recognized a *conditional privilege* for statements made about either a private or public figure if those statements concerned the individual's involvement in an event of public or general interest." (Emphasis

supplied.) *Rosenbloom v. Metromedia*, 403 U. S. 29 (91 SC 1811, 29 LE2d 296), and *New York Times Co. v. Sullivan*, 376 U. S. 254 (84 SC 710, 11 LE2d 686), are cited as authority for this statement. In *New York Times* the court "defined a *constitutional privilege* intended to free [the media from liability for] criticism of *public officials* from the restraints imposed by the common law of defamation." (Emphasis supplied.) *Gertz v. Robert Welch, Inc.*, 418 U. S. 323, 334 (94 SC 2997, 41 LE2d 289). The majority opinion confuses the term "constitutional privilege" with the statutory term "conditional privilege." In Georgia, the term "conditional privilege" is a term of art for it has a codified meaning. It is defined in OCGA § 51-5-7, and is restricted to those statutorily included subjects, and it does not include "statements made about either a private or public figure if those statements concerned the individual's involvement in an event of public or general interest." The *New York Times* case does not discuss a "conditional privilege" and addressed only public officials. Further, any reference to *Rosenbloom* as authority is suspect. *Rosenbloom* was a badly fractured opinion, with five separate opinions being issued, and the views of the plurality of three were soundly rejected in *Gertz. Rosenbloom* applied the "actual malice" test of *New York Times* to a private individual. *Gertz* rejected that notion and the reasoning of *Rosenbloom* (see *Gertz*, supra at 346) and held that *New York Times* "actual malice" test did not apply to media defamation of a private individual, and "that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." Id. at 347. This holding places the authority for establishing the liability for defamation of a private individual with the states. In Georgia, neither our statutes nor decisions of our Supreme Court extend a "conditional privilege" to media publication of newsworthy events.

The majority ignores two Georgia Supreme Court decisions, one decision of this court, and one decision of the United States Supreme Court, in holding that the media has a qualified privilege to publish newsworthy events. The U. S. Supreme Court held that " '[t]he publisher of a newspaper has no special immunity from the application of general laws. He has no special privilege to invade the rights and liberties of others.' *Associated Press v. Labor Board*, 301 U. S. 103, 132-133." *Curtis Publishing Co. v. Butts*, 388 U. S. 130, 150 (87 SC 1975, 18 LE2d 1094). Our Georgia Supreme Court held: "A newspaper is not privileged in its publications, but it is liable for what it publishes, in the same manner as any individual. [Cits.] The *publication of defamatory matter is not privileged because published* in the form of an advertisement, or *as news*, or because furnished by a correspondent, or is copied from other papers. [Cits.]

"The *right to publish* through the newspaper press such matters of interest as may be properly laid before the public *does not go to the extent of allowing the publication* concerning a person *of false and defamatory matter, there being no other reason or justification for so doing than* the mere *publication of the news.*" (Emphasis supplied.) *Cox v. Strickland*, 101 Ga. 482, 493 (3) (28 SE 655). This is our general law in Georgia and apparently the majority view in the United States. See *Atlanta News Publishing Co. v. Medlock*, 123 Ga. 714 (6) (51 SE 756); *Morton v. Stewart*, 153 Ga. App. 636, 637 (266 SE2d 230); *Wood v. Constitution Pub. Co.*, 57 Ga. App. 123, 131 (194 SE 760); *Lowe v. News Pub. Co.*, 9 Ga. App. 103, 104 (5) (70 SE 607); 53 CJS 173, Libel & Slander § 98; 50 AmJur2d 769, Libel & Slander, § 251; Anno. 50 ALR3d 1311, 1362 § 21. No attempt has been made to distinguish or overrule these Georgia authorities. However, they exist and they are incompatible with the majority opinion.

The majority does recognize that *Montgomery v. Pacific &c. Co.*, 131 Ga. App. 712 (206 SE2d 631) and *WSAV-TV v. Baxter*, 119 Ga. App. 185 (166 SE2d 416) should be overruled, but that *Minton v. Thomson Newspapers*, 175 Ga. App. 525 (333 SE2d 913) which followed *Baxter* and *Montgomery* need not be overruled. They distinguish *Minton*, even though it holds that "the media which routinely broadcast or publish news stories of what happens in the community in which the public has a legitimate interest are afforded a cloak of protection in that the publication constitutes a qualified privilege. [*Baxter*, supra.] Where the privilege is qualified (conditional), the exercise of the privilege must be in good faith and ordinary care." 175 Ga. App. at 527. My objection to *Minton* is that it perpetuates the misconception that media publishers and broadcasters have "a qualified privilege" to "publish news stories . . . in which the public has a legitimate interest. . . ." 175 Ga. App. at 527. This wording is contrary to *Cox*, supra, and *Medlock*, supra, and no attempt is made to explain why these Supreme Court cases are not controlling.

The majority opinion finds *Minton* acceptable because it was "decided subsequent to . . . *Gertz* . . . [and] properly applied the standard of ordinary care adopted by our own Supreme Court in *Triangle Publications*. . . ." This reasoning fails to consider that the Supreme Court did not find that the publisher had a "conditional privilege" to publish its defamatory matter. The court explained that "21 states have adopted an ordinary care standard . . . [and they] agree with the majority view that a negligence standard for private figure plaintiffs best preserves the balance between free speech interests and protection of the individual's reputation. See Restatement 2d of Torts, § 580 (b)." 253 Ga. at 181. Hence, the court adopted the Restatement view along with the majority of the states. That Restatement view is: "One consequence of the holding of [*Gertz*, supra] is

that *mere negligence* as to falsity, being required for all actions of defamation, *is no longer treated as sufficient to amount to abuse of a conditional privilege.* Instead, knowledge or reckless disregard as to falsity is necessary for this purpose." (Emphasis supplied.) Restatement 2d, Torts § 600, Comment B. This distinction is the key to my disagreement with the majority view, that is, mere negligence does not defeat "a conditional privilege." A "conditional privilege" (OCGA § 51-5-7) is defeated by "malice." OCGA § 51-5-9. " '(P)roof that the communication as made was privileged will defeat recovery unless actual malice on the part of the defendant exists.' " *Morton v. Gardner*, 155 Ga. App. 600, 604 (271 SE2d 733); *Sparks v. Parks*, 172 Ga. App. 823, 826 (324 SE2d 784); *Van Gundy v. Wilson*, 84 Ga. App. 429, 433 (66 SE2d 93). Thus, it is clear that a conditionally privileged communication is defeated by malice and that a communication regarding a private individual by a media publication or broadcast is now defeated by a showing of negligence. *Triangle Publications*, supra. The only logical conclusion is that the media publication or broadcast is not conditionally privileged. If it was conditionally privileged, the controlling criterion would be "malice." OCGA § 51-5-9. Since such media publication or broadcast regarding a private individual is now defeated by a showing of negligence, and negligence is insufficient to defeat a conditional privileged communication (Restatement 2d, Torts § 600, Comment B), I cannot agree with the majority conclusion that this TV broadcast was conditionally privileged. Hence, since *Minton*, supra, parrots *Baxter*, supra, and *Montgomery*, supra, as to news broadcasts being conditionally privileged, and these holdings are contrary to *Cox*, supra, and *Medlock*, I would overrule *Minton* and follow our Supreme Court.

In summary, the news media have a "constitutional privilege" to publish and broadcast newsworthy items of general or public interest (*Gertz*, supra), and such "privilege" is defeated by a showing of "negligence." *Triangle Publications*, supra at 181. However, this "constitutional privilege" is not the same as Georgia's statutory "conditional privilege" (OCGA § 51-5-7), which is defeated by a showing of "malice." OCGA § 51-5-9. The Georgia Supreme Court, implementing *Gertz* by establishing a standard for determination of liability of a media defendant in a defamation action by a private individual, elected to follow the majority and the Restatement and adopted a "negligence" standard. "Negligence" being insufficient to amount to an abuse of a "conditional privilege" (Restatement 2d, Torts, § 600, Comment B), any notion that a news broadcast of matters of public or general interest is conditionally privileged, is not supported by our law.

I therefore specially concur with the majority.

I am authorized to state that Judge Carley joins in this special

concurrence.

DEEN, Presiding Judge, concurring specially.

This writer concurs in about 95 percent of what is said in the majority opinion and the same percentage of what is said in the other special concurrence filed in this case. Both sides acknowledge that this court should overrule *WSAV-TV v. Baxter*, 119 Ga. App. 185 (166 SE2d 416) (1969), and *Montgomery v. Pacific &c. Co.*, 131 Ga. App. 712 (206 SE2d 631) (1974). There is no disagreement there. In addition, the other special concurrence seeks to overrule *Minton v. Thomson Newspapers*, 175 Ga. App. 525 (333 SE2d 913) (1985). The majority opposes the overruling of the latter cited case. In my opinion, there is only about 5 percent worth of difference between the two positions; the central point focuses upon whether or not to overrule *Minton*.

The other special concurrence is correct in saying that *Minton* quotes, or picks up on, promotes, and parrots the same erroneous language used in the two cases that are to be overruled by agreement, so that the specially concurring opinion has merit. The majority view is also correct in defending *Minton*, to the extent that *Minton* did apply the correct standard under Georgia law.

Where I disagree with both views is that *Minton* contains no precedential value and does not need overruling, because there is nothing left to overrule. The case has, in effect, already been overruled. One judge concurred in the judgment only, rendering the case lifeless as a physical precedent only, so the debate as to overruling it is much ado about nothing. *Minton* contains zero precedential value, and, in the words used by eight judges on this court in *Tanner v. State*, 160 Ga. App. 266, 267 (287 SE2d 268) (1981), is "a toothless tiger" and "a fish that cannot swim"; or in the pithy language of *Sewell v. Eubanks*, 181 Ga. App. 545 (352 SE2d 802) (1987), "is a jellyfish." There is no need to beat a dead horse further; therefore, I concur specially.

DECIDED MARCH 18, 1988 —
REHEARING DENIED APRIL 1, 1988 — ▮▮▮▮▮▮▮▮▮▮

*Charles W. Brannon, Jr.*, for Diamond.
*Paul W. Painter, Jr.*, for Am. Family and Am. Savannah.