321 Ga. 1
FINAL COPY

S24G0335. OSKOUEI v. MATTHEWS.

WARREN, Justice.

Dr. Armin Oskouei, the owner of two medical facilities, filed a lawsuit alleging that Zachary Matthews, a defense attorney who represented clients in cases that tangentially involved the medical facilities, made defamatory statements suggesting that Oskouei performed "illegal" surgeries, among other things. Matthews moved to strike the defamation lawsuit pursuant to Georgia's anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute, OCGA § 9-11-11.1, which allows a trial court to strike certain claims based on a person's right of petition or free speech when there is no "probability that the nonmoving party will prevail on the claim." OCGA § 9-11-11.1 (b) (1). The trial court denied the motion to strike, but the Court of Appeals reversed that ruling in *Matthews v. Oskouei*, 369 Ga. App. 568 (894 SE2d 141) (2023). The Court of Appeals held that Oskouei could not establish a probability

of prevailing on his defamation claims because he had not overcome Matthews's defense of conditional privilege. Id. at 573-575. In this respect, the court determined that Oskouei had not established that Matthews acted with "actual malice," such that "Matthews knew that his statements were false or that he made them with a reckless disregard for the truth." Id. at 575.

We granted Oskouei's petition for certiorari to address an issue of first impression in this Court: whether a plaintiff is required to show that the defendant acted with "actual malice" (i.e., knowledge of falsity or reckless disregard for the truth) to defeat his defense of conditional privilege. We conclude that the "actual malice" standard does not apply in such cases. As we explain below, under OCGA § 51-5-9, to overcome a conditional privilege, a plaintiff must show that the defendant used the privilege "merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted." And in light of the legal and historical context of the text of OCGA § 51-5-9—which was originally codified in 1860—we conclude that a plaintiff meets his burden under that

2

statute by establishing that the defendant's claim of privilege is a sham and that he made the allegedly defamatory statement with ill will toward the plaintiff or with an intent to injure him.

That is not the "actual malice" standard that the Court of Appeals applied in this case. It instead applied the "actual malice" standard the United States Supreme Court first announced in *New York Times Co. v. Sullivan*, 376 U.S. 254 (84 SCt 710, 11 LE2d 686) (1964)—a constitutional standard that applies only in certain defamation cases. In particular, the "actual malice" standard does not pertain to defamation cases brought by private-figure plaintiffs relating to statements that do not involve matters of public concern. Because the Court of Appeals incorrectly imported the "actual malice" standard into OCGA § 51-5-9 in this case, we vacate the Court of Appeals's opinion and remand the case to that court for further proceedings consistent with this opinion. We also overrule several other Court of Appeals cases holding that a plaintiff must establish "actual malice" under *New York Times* to overcome a conditional-privilege defense under OCGA § 51-5-9.

3

1. *Background and Procedural History*

(a) *Oskouei's Defamation Claims*

As summarized by the Court of Appeals:

> The record reflects that Oskouei is the sole owner of a medical practice, Ortho Sport & Spine Physicians, LLC ("Ortho Sport"), and the practice's affiliated ambulatory surgery center, Orthopedic Surgery Center of Sandy Springs ("the surgery center"). In January 2021, the [Georgia Department of Community Health ("the Department")] issued a cease and desist order, prohibiting the surgery center from performing orthopedic surgeries because it found that Oskouei did not have the requisite board certification in orthopedic surgery to justify the center's exemption from the certificate of need program.
>
> The surgery center filed a timely administrative appeal of the cease and desist order, but it was affirmed by both an administrative hearing officer and the agency commissioner. In November 2022, after the surgery center petitioned the superior court for judicial review of the final agency order, the court entered a consent order, granting the petition and vacating the cease and desist order.
>
> Matthews is a defense attorney who was representing clients adverse to parties that had been treated at Ortho Sport and the surgery center. As a result of his investigation and discovery efforts regarding the medical bills of adversarial parties in his clients' cases, Matthews became aware of the cease and desist order, and developed evidence that the surgery center was still performing orthopedic surgeries despite the order.
>
> In March 2021, Matthews sent an e-mail to his

opposing counsel, David Byrd, to discuss settlement of a pending suit brought by Byrd's client. Matthews had previously sent Byrd a copy of the cease and desist letter. In the e-mail to Byrd, Matthews wrote: "As I advised, Ortho Sport & Spine have [sic] been sent a cease-and-desist order for illegally operating what appears to be the very same facility at which your client had treatment. Some or all of those bills . . . appear to have been illegally issued. . . . In the case of Ortho Sport, Dr. Oskouei made misrepresentations of his board certification to even operate the [surgery center] in the first place. Accordingly, it should never have been approved, and the [Department] is presently taking steps to rectify that. At a minimum[,] this situation raises reasonable questions about whether the [surgery center's] facility fee liens would be *collectible*, as they appear to arise out of fraud." (Emphasis in original.)

In her March 2022 affidavit, Stella Adhisurya, Matthews's opposing counsel in another such claim against one of his clients, recounted certain statements Matthews made during a May 2021 phone call regarding a discovery dispute. Specifically, Adhisurya recalled that Matthews told her Oskouei was performing illegal surgeries; equated Oskouei to a "back alley" surgeon or one who was "doing surgeries in a hotel"; referred to Oskouei as "bad news"; and cautioned her against sending clients to Oskouei for treatment.

*Matthews*, 369 Ga. App. at 568-569.

In January 2022, Oskouei filed a lawsuit against Matthews in Fulton County State Court, alleging claims of slander and libel, as well as slander per se and libel per se, such that damages were

presumed, see OCGA § 51-5-4 (b), with respect to the statements he made to Byrd and Adhisurya. The complaint also sought compensatory and punitive damages, attorney fees, and costs of litigation. In March 2022, Matthews filed a motion to strike Oskouei's complaint under the anti-SLAPP statute, which required Matthews to make a threshold showing that the challenged claim is one "arising from" protected activity; if so, Oskouei would then be required to establish that there was "a probability that [he] will prevail on the claim." OCGA § 9-11-11.1 (b) (1).[1] Matthews contended, among other things, that Oskouei could not establish a probability that he would prevail on his defamation claims because the allegedly defamatory statements were conditionally privileged.

---

[1] OCGA § 9-11-11.1 (b) (1) says:
    A claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

6

In his responses to the motion to strike, Oskouei argued, among other things, that the statements were not conditionally privileged because Matthews lacked a good-faith belief in the truth of the statements and because the statements were "malicious."

In November 2022, the trial court issued an order denying Matthews's anti-SLAPP motion to strike. The court concluded under the first part of the anti-SLAPP analysis that Matthews had established that Oskouei's defamation claims arose from protected activity under OCGA § 9-11-11.1 (c) (2).[2] And under the second part of the analysis, the court determined that Oskouei had established a probability of prevailing on his defamation claims. As pertinent to the issue of whether the allegedly defamatory statements were conditionally privileged, the trial court noted that the cease and desist order said that Oskouei could appeal the Department's

[2] OCGA § 9-11-11.1 (c) (2) says that "the term 'act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern,'" as it is used in OCGA § 9-11-11.1 (b), includes "[a]ny written or oral statement or writing or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."

findings and then determined that "a reasonable jury could infer that the findings were not final and therefore [Matthews] did not have a good faith basis to make the alleged statements." The court also concluded that the question of whether the statements were privileged "is within the province of the jury."

(b) *The Court of Appeals's Decision*

Matthews appealed, and in October 2023, the Court of Appeals reversed the denial of the anti-SLAPP motion to strike. See *Matthews*, 369 Ga. App. at 576. The Court of Appeals noted that it would not review the trial court's finding as to the first part of the analysis of an anti-SLAPP motion—that the allegedly defamatory statements arose from protected activity—because Oskouei had not filed a cross-appeal challenging that finding. See id. at 571. The court accordingly turned to the second part of the test: whether Oskouei had established a probability of prevailing on his defamation claims. See id. at 572.

In this respect, the Court of Appeals set forth the elements of a defamation claim under Georgia law:

> (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm.

*Matthews*, 369 Ga. App. at 572 (citation, punctuation and emphasis omitted). The court pretermitted whether Oskouei had established the first, third, and fourth elements and concluded that he had not shown a probability of prevailing on his claims because Matthews's allegedly defamatory statements were conditionally privileged as a matter of law. See id. at 568. Noting that although "the issue of conditional privilege is typically a question for the jury," the court also stated that privilege can apply "as a matter of law in clear and certain cases." Id. at 573. It then determined that Matthews's statements to Byrd and Adhisurya fell within the ambit of OCGA § 51-5-7 (7), which deems conditionally privileged "[c]omments of counsel, fairly made, on the circumstances of a case in which he or she is involved and on the conduct of the parties in connection therewith," because the statements "were made in the course of pending litigation, and concerned the relative settlement values of

9

the claims of opposing counsels' clients." Id.

The Court of Appeals outlined the elements Matthews was required to establish to show that the allegedly defamatory statements were conditionally privileged: that "'(a) [he] acted in good faith; (b) in connection with an interest to be upheld; (c) the statement was properly limited in its scope and occasion; and (d) publication was made to proper persons.'" *Matthews*, 369 Ga. App. at 574 (citation omitted). After reciting that "'[s]tatements are deemed to have not been made in good faith, but rather with malice, if the evidence shows in a clear and convincing manner that a defendant in fact entertained serious doubts as to the truth of his statements,'" the court determined that Matthews made the statements in good faith because there was no evidence of any such doubts; rather, Matthews relied on the cease and desist order in making the statements. Id. (citation omitted). The court also concluded, as a matter of law, that Matthews had established the other three elements of conditional privilege, such that he had "made a prima facie showing that the statements at issue were

10

conditionally privileged." Id. at 574-575.

The Court of Appeals then said that "[t]o defeat Matthews's privilege defense, Oskouei bears the burden to show that Matthews acted with actual malice," *Matthews*, 369 Ga. App. at 575, citing its own precedent and OCGA § 51-5-9, which says, "In every case of privileged communications, if the privilege is used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted, the party defamed shall have a right of action." The court stated that Oskouei could meet this burden by establishing by clear and convincing evidence that "Matthews knew that his statements were false or that he made them with a reckless disregard for the truth." Id. The court determined that Oskouei had not pointed to any evidence that Matthews knew at the time he made the statements that Oskouei's credentials were unblemished or that the surgery center was not illegally performing surgeries after the cease and desist order issued. See id. Concluding that Oskouei had thus failed to show actual malice to defeat Matthews's defense of conditional privilege,

11

the Court of Appeals held that the trial court erred by finding that there was a probability that Oskouei would prevail on his defamation claims, reversed the denial of Matthews's anti-SLAPP motion to strike, and remanded the case to the trial court for it to consider Matthews's request for attorney fees and litigation expenses. See id. at 576.

Oskouei filed a petition for certiorari in this Court, arguing, among other things, that the Court of Appeals erred by requiring him to show that Matthews acted with "actual malice" as defined in *New York Times* to defeat Matthews's conditional-privilege defense because OCGA § 51-5-9 requires only a showing of "private malice." We granted the petition to address that issue.[3]

---

[3] We did not grant Oskouei's petition for certiorari to address the Court of Appeals's conclusion that Matthews's allegedly defamatory statements fell within the type of communication set forth in OCGA § 51-5-7 (7), whether the test set forth above for establishing a conditional privilege applies to OCGA § 51-5-7 (7), or whether the Court of Appeals erred by determining that Matthews had satisfied that test, such that he made a prima facie showing that his statements were conditionally privileged. We therefore do not address those issues.

We note that the Atlanta Journal-Constitution, WSB-TV, and the Georgia First Amendment Foundation jointly filed an amicus curiae brief in this case, arguing that the Court of Appeals was correct in its assessment of

2. *The Undisputed Legal Principles that Apply to this Case*

The parties do not dispute the legal framework that applies to the analysis of Matthews's anti-SLAPP motion to strike, the well-settled elements of a claim for defamation, or the elements required for a defendant to establish that an allegedly defamatory statement is conditionally privileged. We therefore briefly set forth these undisputed legal principles before addressing the issue at the crux of this case: what a plaintiff must establish to defeat a showing of conditional privilege under OCGA § 51-5-9.

(a) *The Analysis of an Anti-SLAPP Motion to Strike*

As discussed above, the analysis of an anti-SLAPP motion to strike involves two steps. See OCGA § 9-11-11.1 (b) (1). See also *American Civil Liberties Union, Inc. v. Zeh*, 312 Ga. 647, 650 (864 SE2d 422) (2021); *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 306 Ga. 252, 261 (830 SE2d 119) (2019). First, the court must determine whether the party filing the anti-SLAPP motion (here,

the "actual malice" required to overcome Matthews's conditional-privilege defense. We thank them for their amicus brief.

13

Matthews) "has made a threshold showing that the challenged claim is one arising from protected activity." *Zeh*, 312 Ga. at 650 (citation and punctuation omitted). If so, the court must "decide whether the plaintiff has established that there is a probability that [he] will prevail on the claim." Id. (citation and punctuation omitted).[4]

With respect to the first step, the trial court concluded here that Oskouei's defamation claims arose from protected activity under OCGA § 9-11-11.1 (c) (2), and as noted above, that conclusion is not at issue in this appeal. See *Wilkes*, 306 Ga. at 262 (explaining that a challenged claim arises from protected activity when it could

---

[4] To make such a showing, "the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Zeh*, 312 Ga. at 653 (citations and punctuation omitted).

> For purposes of this inquiry, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant; though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. In making this assessment[,] it is the court's responsibility to accept as true the evidence favorable to the plaintiff. In this regard, the merits of the plaintiff's claim are evaluated using a summary-judgment-like procedure at an early stage of the litigation.

Id. (citation and punctuation omitted).

14

reasonably be construed as fitting within one of the categories set forth in OCGA § 9-11-11.1 (c)). Thus, the dispositive issue on appeal before this Court is whether Oskouei has met his burden of establishing under the second step of the anti-SLAPP analysis that there is a probability that he will prevail on his defamation claims.

(b) *The Elements of a Defamation Claim*

In Georgia, a claim for defamation has four elements:

> (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm.

*Zeh*, 312 Ga. at 650 (citation and punctuation omitted). As discussed above, the Court of Appeals determined that Oskouei could not establish a probability of prevailing on his defamation claims because he could not prove the second element: an unprivileged communication to a third party. See *Matthews*, 369 Ga. App. at 570.

Georgia law recognizes two kinds of privileged

15

communications: absolute and conditional.[5] Absolutely privileged communications, such as allegations contained in pleadings filed in court, cannot form the basis for a defamation action. See OCGA § 51-5-8 (providing in pertinent part that "[a]ll charges, allegations, and averments contained in regular pleadings filed in a court . . . , which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged"). See also, e.g., *Saye v. Deloitte & Touche, LLP*, 295 Ga. App. 128, 131 (670 SE2d 818) (2008) (explaining that an absolutely privileged statement "'entirely free[s] the [defendant] from any liability to the person injured by the words or the publication'") (citation omitted).

By contrast, when a defendant makes a prima facie showing that an allegedly defamatory statement is conditionally privileged, the burden shifts to the plaintiff to make an additional showing of

---

[5] Historically, conditional privileges have also been referred to as "qualified privileges," and those terms have been used interchangeably in Georgia decisional law. See, e.g., John Townshend, A Treatise on the Wrongs Called Slander and Libel, and on the Remedy by Civil Action for Those Wrongs, Together with a Chapter on Malicious Prosecution § 240 n.1 (4th ed. 1890); *Murray v. Community Health Systems Professional Corp.*, 345 Ga. App. 279, 286 (811 SE2d 531) (2018).

proof to overcome the privilege defense. See *Saye*, 295 Ga. App. at 131. In this respect, OCGA § 51-5-7 sets forth the types of communications that are conditionally privileged.[6] Once the defendant establishes that the allegedly defamatory statement falls within a category of communications listed in OCGA § 51-5-7, he bears the burden of showing "'good faith, an interest to be upheld, a

---

[6] OCGA § 51-5-7 says:
> The following communications are deemed privileged:
> (1) Statements made in good faith in the performance of a public duty;
> (2) Statements made in good faith in the performance of a legal or moral private duty;
> (3) Statements made with a good faith intent on the part of the speaker to protect his or her interest in a matter in which it is concerned;
> (4) Statements made in good faith as part of an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, as defined in subsection (c) of Code Section 9-11-11.1;
> (5) Fair and honest reports of the proceedings of legislative or judicial bodies;
> (6) Fair and honest reports of court proceedings;
> (7) Comments of counsel, fairly made, on the circumstances of a case in which he or she is involved and on the conduct of the parties in connection therewith;
> (8) Truthful reports of information received from any arresting officer or police authorities; and
> (9) Comments upon the acts of public men or public women in their public capacity and with reference thereto.

17

statement properly limited in its scope, a proper occasion, and publication to proper persons.'" *Zeh*, 312 Ga. at 661 n.16 (citation omitted). The plaintiff then bears the burden of defeating the defendant's defense of conditional privilege. See, e.g., *Saye*, 295 Ga. App. at 133. The plaintiff can do so by proving that "the privilege is used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted." OCGA § 51-5-9.

3. *A Review of the History and Context of OCGA § 51-5-9 Shows That the "Private Malice" Referenced in That Statute Is Derived From Legal Principles Developed Before, and Apart From, the* New York Times *"Actual Malice" Standard*

The question we must answer in this case is whether the "private malice" referenced in OCGA § 51-5-9 signifies the "actual malice" defined by the United States Supreme Court in *New York Times*—that is, knowledge of falsity or reckless disregard for truth. The short answer is no.

The longer answer involves analysis of the original public

18

meaning of the phrase "private malice" as it is used in OCGA § 51-5-9. In considering the meaning of OCGA § 51-5-9, "'we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.'" *Seals v. State*, 311 Ga. 739, 740 (860 SE2d 419) (2021) (citation omitted), disapproved on other grounds by *Gonzales v. State*, 315 Ga. 661 (884 SE2d 339) (2023). "The ordinary public meaning of statutory text that matters is the meaning the statutory text had at the time it was enacted." Id. (considering the original public meaning of a statute). Cf. *Olevik v. State*, 302 Ga. 228, 235 (806 SE2d 505) (2017) (explaining that "there are few principles of Georgia law more venerable than the fundamental principle that a constitutional provision means today what it meant at the time that it was enacted"). Determining this meaning requires us to consider the text of the statute in the context in which it was originally enacted. See *Seals*, 311 Ga. at 740. "'The primary determinant of a text's meaning is its context, which

includes the structure and history of the text and the broader context in which that text was enacted, including statutory and decisional law that forms the legal background of the written text.'" Id. (citation omitted).

The text of what is now OCGA § 51-5-9 was originally enacted as part of Georgia's first Code in 1860. See Georgia Code of 1860 § 2923 (effective Jan. 1, 1863). Accordingly, in determining the original public meaning of OCGA § 51-5-9, we look to the text of the statute in the context of its first enactment in 1860. See *Seals*, 311 Ga. at 740. Our search for the meaning of statutory text "always begins with the text itself." *Sons of Confederate Veterans v. Henry County Bd. of Commrs.*, 315 Ga. 39, 47 (880 SE2d 168) (2022) (conducting an original public meaning analysis of text that was carried forward from the Georgia Constitution of 1798). Although we typically focus on the ordinary meaning the text had at the time it was enacted, see, e.g., *Seals*, 311 Ga. at 740, as explained more below, in this case, it is apparent that "private malice" is a legal term of art that around the time the text of the first version of OCGA §

51-5-9 was codified in 1860, was often used in the legal context of explaining what a plaintiff must show to overcome a defendant's defense of conditional privilege in a defamation case. See, e.g., John Townshend, A Treatise on the Wrongs Called Slander and Libel, and on the Remedy by Civil Action for Those Wrongs, Together with a Chapter on Malicious Prosecution § 225 (4th ed. 1890) ("Townshend") (explaining that a plaintiff can defeat a conditional-privilege defense in a defamation case by showing that the defendant "avail[ed] himself of his situation to gratify private malice by uttering slanderous expressions").[7] So to determine the meaning

_____

[7] As explained in footnote 11 below, although the legal showing necessary to defeat a defense of conditional privilege was traditionally described using the term of art "private malice," other terms that encompassed the same meaning, including "malice," "actual malice," and "express malice," were also used.

We note that we often look to contemporaneous dictionaries from around the time the statutory text was adopted to determine the ordinary meaning of that text—although "[d]ictionaries cannot be the definitive source of ordinary meaning in questions of textual interpretation because they are acontextual, and context is a critical determinant of meaning." *State v. SASS Group, LLC*, 315 Ga. 893, 898-899 (885 SE2d 761) (2023). The term of art "private malice" was not included in the earliest version of Black's Law Dictionary. See Henry Campbell Black, A Dictionary of Law (1891). But dictionaries defining the ordinary meaning of "private" and "malice" around the time the first version of OCGA § 51-5-9 was enacted comport with the traditional legal meaning that was ascribed to the term of art "private malice," as explained further below.

21

of the term "private malice" in the earliest version of OCGA § 51-5-9, we look to the legal usage of that term in the context in which the statute was first enacted in 1860.

Generally, a key aspect in assessing the context in which a statute was enacted is the body of pre-enactment decisions of this Court interpreting the meaning of certain text that the drafters of the statute chose to use. Cf. *Olevik*, 302 Ga. at 236. But prior to 1860, there was little Georgia appellate decisional law about civil defamation principles, let alone conditional privilege to claims of defamation—likely because this Court was established only 15 years earlier, see Ga. L. 1845, p. 18, and few decisions were reported at that time. Indeed, the parties have not pointed us to, and we have not found, any Georgia decisional law prior to 1860 that provides significant clues about the meaning of the "private malice" required to defeat a conditional privilege.

---

See, e.g., Noah Webster, An American Dictionary of the English Language, 804, 1039 (1865) (defining "[p]rivate" in pertinent part as "[b]elonging to, or concerning, an individual person" and defining "[m]alice" in pertinent part as "ill-will" or "a disposition to injure others").

Thus, we look for guidance to other legal authority that existed around the time OCGA § 51-5-9 was enacted in 1860 that interpreted the term of art "private malice" within the context of overcoming a conditional-privilege defense to a defamation claim. Cf. *Olevik*, 302 Ga. at 236 (explaining that constitutions and statutes "'are properly to be expounded in the light of conditions existing at the time of their adoption'") (citation omitted). In so doing, we look to the body of decisional law regarding conditional privileges that developed in England around the nineteenth century (around the time OCGA § 51-5-9 was codified in Georgia in 1860),[8] cases from American states from around that time that carried forward the legal principles set forth in those English defamation

---

[8] It appears that although certain civil defamation principles developed at English common law during the fifteenth and sixteenth centuries, the doctrine of conditional privileges was not meaningfully developed until around the nineteenth century. See generally C.G. Addison et al., Wrongs and Their Remedies: A Treatise on the Law of Torts, Chapter XVII (4th ed. 1882) ("Addison"). Because the English common law of defamation as it existed on May 14, 1776—which was adopted by our General Assembly except to the extent that it was displaced by our own constitutional or statutory law, see OCGA § 1-1-10 (c) (1)—did not comprise a body of law regarding conditional privileges, it offers little guidance in determining the meaning of OCGA § 51-5-9.

decisions, and prominent nineteenth century treatises describing and analyzing the legal doctrine of conditional privilege as it applied in both England and in American states in the early nineteenth century. Although such authority is not binding on this Court, it can be persuasive evidence of the original public meaning of OCGA § 51-5-9—the meaning that the drafters of the first version of OCGA § 51-5-9 understood that provision to have when it was originally codified in 1860—especially to the extent that authority used and interpreted language similar to (and within the same legal context of) the text that the drafters of the first version of OCGA § 51-5-9 chose to use in that statute. Cf. *Elliott v. State*, 305 Ga. 179, 193-195 (824 SE2d 265) (2019) (examining the backdrop of English common law and early American decisional law in determining the meaning of a provision in the Georgia Constitution of 1877).

(a) *The Legal Backdrop Against Which OCGA § 51-5-9 Was Enacted*

(i) *Malice in Law and Malice in Fact*

In England and in the American states around the early

24

nineteenth century, defamation was a strict-liability tort that did not require proof of falsity, fault, or actual damages. See *Mathis v. Cannon*, 276 Ga. 16, 20 (573 SE2d 376) (2002). See also C.G. Addison et al., Wrongs and Their Remedies: A Treatise on the Law of Torts §§ 1087-1089 (4th ed. 1882) ("Addison"). "[T]he law implie[d] malice from the very fact of the publication of the defamatory matter." Addison, supra, at § 1090. This sort of legal "malice" (or "malice in law") meant "a wrongful act, done intentionally, without just cause or excuse," and was distinct from "malice in fact," which in accordance with the general understanding of the term "malice," meant "ill will against a person," *Bromage v. Prosser*, 107 Eng. Rep. 1051, 1054 (1825), or an intent "to injure," *Hart v. Reed*, 40 Ky. 166, 169 (1840). See also, e.g., Addison, supra, at § 1090; TOWNSHEND, supra, at §§ 87, 209. Because legal malice was presumed in defamation cases, a defendant was strictly liable for publishing a defamatory statement—even in the absence of "malice in fact" (that is, "ill will against a person" or an intent "to injure")—unless he could establish as his defense that the statement was true or that a

25

privilege applied. See Addison, supra, at § 1089.[9]

(ii) *Privileges Applicable to Claims of Defamation*

Early nineteenth century English and American law recognized absolute privileges and conditional privileges. See Townshend, supra, at § 209. The latter applied when an allegedly defamatory statement was considered reasonably necessary to further a particular societal interest. See Addison, supra, at § 1091 (noting that a privileged communication "is fairly made by one person to another in the discharge of some public or private duty, whether legal, moral, or social, or in the conduct of his own affairs in matters where his interest is concerned"). In this respect, conditional privileges attached to many sorts of "occasion[s]," or types of communications, so long as the statement was made for the protection of one's own legitimate interests or the legitimate interests of another person. Townshend, supra, at §§ 208-209. See

_____

[9] The truth of an allegedly defamatory statement was a complete defense in England and the American states by the nineteenth century and remains so under Georgia law today. See, e.g., Addison, supra, at § 1089; *Dellinger-Allen v. O'Brien*, 355 Ga. App. 811, 817 (846 SE2d 124) (2020).

also, e.g., *Dunn v. Winters*, 21 Tenn. 512, 513 (1841).[10]

A conditional privilege prevented the inference of legal malice and afforded the defendant a "qualified defen[s]e." *Toogood v. Spyring*, 149 Eng. Rep. 1044, 1050 (1834). See also, e.g., *Lewis v. Chapman*, 16 N.Y. 369, 373 (1857). In this sense, if a defendant established that an allegedly defamatory statement was conditionally privileged, the presumption of legal malice was rebutted, such that the conditional-privilege defense constituted an exception to the general rule that malice was implied in every defamatory publication. See Townshend, supra, at § 209.

A plaintiff could defeat a defense of conditional privilege, however, by establishing that the defendant acted with malice in fact when he made the allegedly defamatory statement. See *Toogood*, 149 Eng. Rep. at 1050 (explaining that the "qualified

---

[10] As pertinent to the circumstances in this case, we note that around the nineteenth century in England and the American states, one such "occasion" to which a conditional privilege applied included statements made by counsel that were related to the circumstances of a pending legal proceeding. See Townshend, supra, at § 225 (explaining that statements made by counsel "that he may reasonably believe to be necessary for the successful maintenance of his action or defense" were conditionally privileged).

27

defen[s]e" provided by a conditional privilege "depend[ed] upon the absence of actual malice"); Townshend, supra, at § 209 (noting that a conditional privilege could be "destroy[ed]" if the plaintiff "prove[d] that there was malice in fact"). As mentioned above, a showing of "malice in fact" generally required a showing of something like "ill will" or "an intent to injure." Addison, supra, at § 1090; Townshend, supra, at § 209.[11] Such a showing by the plaintiff established that the defendant's assertion of conditional privilege (i.e., that he made the allegedly defamatory statement with the bona fide intent of protecting a legitimate societal interest) was a pretense to cover up his true motive in making the statement: an intent to injure the

---

[11] Notably, in England and the United States around the nineteenth century, the "malice in fact" that was required to defeat a conditional privilege was described using multiple terms, such as "malice," "actual malice," "express malice," and "private malice." See, e.g., Addison, supra, at § 1091 (noting that a conditional privilege bars recovery "in the absence of express malice"); id. at § 1091 (l) (noting that a communication is conditionally privileged "in the absence of malice or bad faith"); id. at § 1103 (explaining that "actual malice" must be shown to destroy a conditional privilege "in the shape of proof that the defendant was not actuated by a justifiable motive, but by some evil intention towards the plaintiff"); Townshend, supra, at § 209 n.1 (explaining that "malice" defeats a conditional privilege); id. at § 225 (noting that the privilege does not apply when the defendant "avail[s] himself of his situation to gratify private malice by uttering slanderous expressions").

plaintiff. See, e.g., *Wakefield v. Smithwick*, 49 N.C. 327, 330 (1857) (explaining that to defeat a conditional privilege, "the burden is upon the plaintiff to prove that [the allegedly defamatory statement] was not made *bona fide* in consequence of such relation, but out of malice, and that the existence of such relation was used as a mere cover for [the defendant's] malignant designs") (*emphasis* in original); *Gilpin v. Fowler*, 156 Eng. Rep. 263, 267-268 (1854) (holding that there was evidence of malice to defeat a conditional privilege where the defendant, a parson who oversaw a school, distributed a letter to his parishioners containing defamatory statements about a schoolmaster at a rival school under the pretext that the defendant was acting in the interests of his parishioners).

Specifically, a plaintiff in early nineteenth century England and the American states could establish that the defendant acted with ill will or an intent to injure, such that his claim of conditional privilege was a pretext, by offering evidence of the defendant's improper motive in making the statement. See Townshend, supra, at § 245. In determining whether the defendant's motive was to

29

protect a legitimate interest (and thus bona fide) or not (and thus a pretense to hide his true motive of malice), courts generally considered all of the circumstances in a case, including for instance, evidence showing that the allegedly defamatory statement "was false within the knowledge of the publisher; or . . . showing a bad motive in making the publication, as that it was made more publicly than was necessary to protect the interests of the parties concerned, or that it contained matter not relevant to the occasion, or that the publisher entertained ill-will toward the person whom the publication concerned." Id. Whether a plaintiff had established malice to defeat a defense of conditional privilege was generally a question for the jury. See, e.g., *Wakefield*, 49 N.C. at 331; *Gilpin*, 156 Eng. Rep. at 268.

In sum, the early nineteenth century English and American law cited above recognized a conditional privilege for statements made with a bona fide view to protect a legitimate societal or personal interest. But a plaintiff could defeat such a defense by showing that the defendant used the privilege as a pretense to hide

30

his true motive of malice. To that end, if the plaintiff could establish that the defendant made the allegedly defamatory statement with ill will or an intent to injure the plaintiff—rather than with the honest purpose of promoting a legitimate interest—the privilege was lost.[12]

---

[12] In 1845, the United States Supreme Court reiterated these principles in a defamation case in which the plaintiff, who held the office of collector of customs, alleged that the defendants made defamatory statements about him to the president and to other public officials. See *White v. Nicholls*, 44 U.S. 266, 267-278 (11 LE 591) (1845). Citing nineteenth century English cases, the Court explained that a conditionally privileged statement meant "'that the occasion of making it rebuts the *prima facie* inference of malice arising from the publication of matter prejudicial to the character of the plaintiff, and throws upon him the onus of proving malice in fact.'" Id. at 287 (citation omitted; *emphasis* in original). In this respect, the Court concluded that to defeat a conditional privilege, a plaintiff bears the burden of showing that "express malice" was "the true motive" of the defendant's conduct. Id. at 291. The plaintiff could make such a showing, the Court held, by establishing "falsehood and the absence of probable cause." Id. Concluding that the trial court had erroneously charged the jury in several respects as to these principles and that the issues of whether a conditional privilege existed and whether the plaintiff had proved malice were for the jury, the Court remanded the case for another trial. See id. at 291-292. We also note that more than 100 years later, the Court explained, consistent with its decision in *White*, that "long before *New York Times* was decided," conditional privileges protected a publisher of an allegedly defamatory statement from liability "unless the publication was made with malice," which "depended upon a showing that the defendant acted with improper motive." *Herbert v. Lando*, 441 U.S. 153, 163-164 & n.12 (99 SCt 1635, 60 LE2d 115) (1979). Although *White* and *Herbert* have no binding effect on our interpretation of OCGA § 51-5-9, which is a question of state—not federal—law, these cases (like the English and early American decisional law and treatises we cite above) illustrate the principles that formed the basis of

(b) *The Codification of Nineteenth Century Defamation Principles in a Precursor to OCGA § 51-5-9 and Early Georgia Decisional Law Applying Those Principles*

The text that is now found in OCGA § 51-5-9 was first codified in Section 2923 of the Georgia Code of 1860, which said: "In every case of privileged communications, if the privilege is used merely as a cloak for venting private malice, and not *bona fide* in promotion of the object for which the privilege is granted, the party defamed has a right of action." (*Emphasis* in original.) See also Code of 1860 §§ 2917 (explaining that in defamation cases, "malice is inferred from the character of the charge" and that "in cases of privileged communications," proof rebutting the inference of malice barred recovery); 2922 (listing certain types of conditionally privileged

early American defamation law in the states, including Georgia defamation law. See, e.g., *Stanley v. Patterson*, 314 Ga. 582, 583-584 n.3 (878 SE2d 529) (2022) (explaining that United States Supreme Court precedent, although not binding, was persuasive in light of its "thorough assessment of the common-law basis of federal judicial immunity that also formed the basis for Georgia's judicial immunity doctrine").

communications).[13] The text of Section 2923, which has been included in substantially similar form in every subsequent version of the Code, is consonant with the traditional English and early American legal rule regarding the showing required to defeat a conditional-privilege defense discussed above, and nothing in the text of Section 2923 suggests that it altered that established rule. We therefore conclude that Section 2923 codified the rule that a defense of conditional privilege cannot succeed if the plaintiff establishes that the defendant made the allegedly defamatory statement with ill will or an intent to injure rather than with the honest purpose of promoting a legitimate interest.

Consistent with this conclusion, the first Georgia decisions

---

[13] Although not at issue here, we note that this Court has understood the phrase "[i]n every case of privileged communications" in the text of what is now OCGA § 51-5-9 to mean "every case of conditional privilege." *Wilson v. Sullivan*, 81 Ga. 238, 243 (7 SE 274) (1888). We also note that the text of Section 2917 of the Georgia Code of 1860 has been carried forward in substantially similar form in every version of the Code and is now found in OCGA § 51-5-5. And many of the sorts of conditional privileges listed in Section 2922 of the Code of 1860 are now enumerated in OCGA § 51-5-7, including the conditional privilege that the Court of Appeals concluded applied in this case: "Comments of counsel, fairly made, on the circumstances of a case in which he or she is involved and on the conduct of the parties in connection therewith."

applying the predecessors to OCGA § 51-5-9 set forth the principle that a plaintiff can defeat a conditional-privilege defense by showing that the defendant acted with ill will or an intent to injure the plaintiff when he made the allegedly defamatory statement. For example, in *Lester v. Thurmond*, 51 Ga. 118 (1874), the plaintiff sued the defendant, a lawyer, for defamation based on a statement that he made during a criminal trial. See id. at 119. Explaining that the defendant's statement was "privileged" because it was made "in the discharge of his duty in the regular course of judicial proceedings in the courts," this Court determined that the plaintiff was required to prove "*actual malice*" or "express malice," meaning that he must establish that the defendant "avail[ed] himself of his position as an advocate *maliciously* to slander another by uttering words wholly unjustifiable." Id. at 120 (*emphasis* in original). Concluding that the plaintiff had failed to submit any evidence that the defendant's statement was "spoken *maliciously*," this Court upheld the jury's

verdict for the defendant. Id. (*emphasis* in original).[14] See also *Pearce v. Brower*, 72 Ga. 243, 244-246 (1884) (reversing the trial court's grant of the defendant's motion for a "non-suit" on the grounds that the allegedly defamatory statement was conditionally privileged and the plaintiff had failed to overcome the privilege by "show[ing] malice" because that issue was for the jury to decide, and noting that on remand, if the statement was "written in good faith, without malice, and with no intent to injure the reputation of the plaintiff," the conditional-privilege defense would apply, "[b]ut if the privilege was used merely as a cloak for venting private malice, and not *bona fide* in promotion of the object for which the privilege is granted, then the plaintiff could recover") (*emphasis* in original); *Jones v. Forehand*, 89 Ga. 520, 523-524 (16 SE 262) (1892) (explaining that a conditionally privileged statement is "made with the *bona fide*

---

[14] The text of OCGA § 51-5-8, which as discussed above, provides that "charges, allegations, and averments contained in regular pleadings" are absolutely privileged, was first enacted in substantially similar form in 1895, more than 20 years after *Lester* was decided. See Code of 1895 § 3842. *Lester* did not address whether the allegedly defamatory statements in that case fell within the ambit of absolute privilege.

35

intent on the part of the defendant to protect his own interest in [the] matter" and is "*prima facie* protected," and "this protection remains until overcome by proof of express malice; and, though the language, if violent or excessive, may amount to proof of express malice, it should be left to the jury to say whether it amounts to such proof or not") (*emphasis* in original).

Throughout the first half of the twentieth century, Georgia appellate courts continued to follow the rule that a plaintiff, to defeat a defense of conditional privilege, must establish that the defendant acted with ill will or an intent to injure. See, e.g., *Holmes v. Clisby*, 118 Ga. 820, 825 (45 SE 684) (1903) (explaining that the question of conditional privilege is "dependent upon the intention with which [the allegedly defamatory statement] was published. If bona fide, with the sole purpose of protecting himself, it would be; if otherwise, it would not" and noting that the issue should be determined by a jury); *Sheftall v. Central of Ga. Ry. Co.*, 123 Ga. 589, 592-593 (51 SE 646) (1905) (citing various provisions of Townshend, supra, in explaining the defense of conditional privilege; setting

36

forth the elements of conditional privilege that Georgia appellate courts still apply today—"good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a proper manner and to proper parties only"; and noting that the privilege would be lost if it "was used as a cloak for venting malice"); *Atlanta News Publishing Co. v. Medlock*, 123 Ga. 714, 719-720 (51 SE 756) (1905) (explaining that a conditional privilege could be defeated by "actual malice" or "express malice"); *Gillis v. Powell*, 129 Ga. 403, 409-411 (58 SE 1051) (1907) (noting that "the law will not tolerate [the conditional privilege] being used to vent the malice of any individual, even though he may be one who thinks he has been grievously wronged" and that if the defendant made the allegedly defamatory statement "in good faith and without malice, and to the proper persons, at proper times and places, he would be entitled to a verdict in his favor. On the other hand, if it should appear that he was animated by malice in his statements, the plaintiff would be entitled to recover"); *Nicholson v. Dillard*, 137 Ga. 225, 231 (73 SE 382) (1911) (explaining that a statement is

conditionally privileged if the defendant makes it "with a bona fide intent to protect his own interest in a matter where it is concerned; but in such a case he must do so at his peril, if he exceeds the limit of his privilege and uses the language, not merely to protect his interest, but to vent his private malice on the person spoken of"); *McIntosh v. Williams*, 160 Ga. 461, 465 (128 SE 672) (1925) (explaining that if an allegedly defamatory statement was conditionally privileged, such that "it was made in good faith and without malice by the defendant to protect his interest . . . , then the plaintiff could not recover"); *Atlanta Journal Co. v. Doyal*, 82 Ga. App. 321, 332-333 (60 SE2d 802) (1950) (explaining that the term "malice" in the law of defamation can "be used in two senses": "to denote absence of lawful excuse or to indicate absence of privileged occasion," which is "'[i]mplied' malice or 'malice in law,'" and to denote "intent of mind and heart, or ill will against a person," which is "'express malice' or 'malice in fact'" and saying that "[p]roof that the communication is privileged rebuts the prima facie presumption of malice in law" and that the "only effect of privilege is to require

38

the plaintiff to prove actual malice") (citation and punctuation omitted); *Shiver v. Valdosta Press*, 82 Ga. App. 406, 411 (61 SE2d 221) (1950) (concluding that a conditional privilege is defeated "if the defendant acted with express malice and a desire to injure the plaintiff and expose him to public hatred, contempt and ridicule in the publication").[15]

Thus, consistent with the early nineteenth century legal landscape discussed above, for nearly 100 years, appellate cases in Georgia applied the rule that a defamation plaintiff, to defeat a defense of conditional privilege, must establish that the defendant's claim that he made an allegedly defamatory statement to promote a

---

[15] Consistent with early nineteenth century decisional law in England and the American states, a plaintiff in Georgia could establish that the defendant made an allegedly defamatory statement with ill will or an intent to injure by showing that he knew that the statement was false or that he harbored feelings of ill will toward the plaintiff. See, e.g., *Jordan v. Hancock*, 91 Ga. App. 467, 474 (86 SE2d 11) (1955) (noting that "under the pleadings and proof in this case, there was an issue of fact as to whether the communication referred to was made maliciously with conscious knowledge that it was false, in which case there would be such abuse of the privilege claimed as to deny to the defendants the right to claim its protection from liability"); *Van Gundy v. Wilson*, 84 Ga. App. 429, 430 (66 SE2d 93) (1951) (noting in the "[s]yllabus by the [c]ourt" that a plaintiff can show actual malice to defeat a conditional privilege "by introducing in evidence extraneous circumstances which show an actual spite, ill will or desire to injure the person defamed").

legitimate interest is a sham or ruse—and that he made the statement with "private malice," meaning with ill will toward the plaintiff or with an intent to injure him. But something happened in 1964 that injected confusion into the Court of Appeals's analysis of private malice: the United States Supreme Court decided *New York Times*, which formulated, as a matter of federal constitutional law, a meaning for the term "actual malice" that differed from the meaning that Georgia defamation law had ascribed to "private malice." In the wake of *New York Times*, it appears that the Court of Appeals, over time and without analysis of the legal context of OCGA § 51-5-9, developed a line of precedent that engrafted the constitutional standard onto Georgia law. To better explain, we turn to the federal constitutional law on defamation set forth in *New York Times* and its progeny and the effect of those constitutional requirements on state defamation law.

(c) New York Times *and Its Progeny*

In *New York Times*, the United States Supreme Court held that the First Amendment places certain limitations on state defamation

40

law. In that case, a public official in Alabama sued the publisher of the New York Times for defamation in state court based on a political advertisement condemning the actions of local public officials with respect to their handling of civil rights demonstrations in Alabama. See *New York Times*, 376 U.S. at 256-259. It was undisputed that some of the statements in the advertisement were false, such that the publishing company would be strictly liable under Alabama law unless it could establish that the statements were true. See id. at 256-263. Noting that a "rule compelling the critic of official conduct to guarantee the truth of all his factual assertions" would deter protected speech, the Court announced that the First Amendment

> prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

Id. at 279-280.

The "actual malice" standard, which the Court has since described as "a constitutional privilege," *Gertz v. Robert Welch, Inc.*,

41

418 U.S. 323, 334 (94 SCt 2997, 41 LE2d 789) (1974), was later extended beyond "public officials" to plaintiffs who are "public figures," see *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 155 (87 SCt 1975, 18 LE2d 1094) (1967) (plurality opinion).[16] The United States Supreme Court has also held that even a private-figure plaintiff is required to prove "actual malice" in order to recover presumed or punitive damages if the defamatory statement was about a matter of public concern. See *Gertz*, 418 U.S. at 349-350. See also *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761-763 (105 SCt 2939, 86 LE2d 593) (1985) (explaining that "'[w]hether . . . speech addresses a matter of public concern must be determined by [the expression's] content, form, and context . . . as revealed by the whole record'" and holding that a false credit report regarding the plaintiff was not a matter of public concern) (citation omitted).

In such cases, "actual malice" must be proved not merely by a

---

[16] Such a "public-figure" plaintiff has assumed a role of "especial prominence in the affairs of society," either for all purposes or for the limited purpose of the particular public controversy at issue. *Gertz*, 418 U.S. at 345.

preponderance of the evidence but by clear and convincing evidence, see *New York Times*, 376 U.S. at 285-286; *Gertz*, 418 U.S. at 342, which is an "extremely high" standard of proof, *Zeh*, 312 Ga. at 669 (citation and punctuation omitted). And the United States Supreme Court has made clear that "actual malice" in the constitutional sense requires a plaintiff to show "that the defendant actually had a 'high degree of awareness of . . . probable falsity.'" *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (109 SCt 2678, 105 LE2d 562) (1989) (citation omitted). See also *St. Amant v. Thompson*, 390 U.S. 727, 731 (88 SCt 1323, 20 LE2d 262) (1968) ("There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."). Thus, the term "actual malice" as defined in *New York Times* is more stringent than the sort of "malice in fact" that a plaintiff was required to prove under the traditional rule to defeat a conditional privilege. Indeed, the United States Supreme Court has emphasized that "the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the

43

term" and that the "phrase 'actual malice' is unfortunately confusing in that it has nothing to do with bad motive or ill will." *Harte-Hanks*, 491 U.S. at 666 & n.7. See also, e.g., *Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81, 82-83 (88 SCt 197, 19 LE2d 248) (1967) (explaining that an instruction that the jury "could find for the [public-official plaintiff] if it were shown that [the defendant] had published the editorials 'with bad or corrupt motive,' or 'from personal spite, ill will or a desire to injure [the] plaintiff'" misstated the "actual malice" standard in *New York Times*, which requires a showing that the defendant made the allegedly defamatory statement "'with knowledge that it was false or with reckless disregard of whether it was false or not'").[17]

---

[17] Notably, the United States Supreme Court borrowed the term "actual malice" from the traditional rule that a plaintiff must show malice in fact or "actual malice" to defeat a conditional privilege, although the Court defined "actual malice"—in its constitutional sense—differently than that term was ordinarily understood. In this respect, in announcing the "actual malice" standard in *New York Times*, the Court cited a 1908 Kansas Supreme Court case, *Coleman v. MacLennan*, 78 Kan. 711 (98 P 281) (1908). See *New York Times*, 376 U.S. at 280. The Court recounted that in *Coleman*, which involved a defamation lawsuit brought by a Kansas public official against a newspaper, the Kansas Supreme Court held that a "'qualified'" privilege exists for "'matters of public concern, public men, and candidates for office'" and a

The constitutional "actual malice" requirement does not pertain, however, to defamation cases brought by private-figure plaintiffs relating to statements that do not involve matters of public concern. Those cases are controlled by Georgia law. About ten years

---

plaintiff in such cases "'must show actual malice, or go remediless.'" *New York Times*, 376 U.S. at 281-282 (quoting *Coleman*, 78 Kan. at 285-286). But the United States Supreme Court did not mention, much less import into its definition of "actual malice" in the constitutional sense, the meaning that *Coleman* ascribed to the phrase "actual malice." *Coleman* defined "actual malice" in the same way that it was defined by the traditional nineteenth century rule. See 78 Kan. at 741 (stating that "[i]f [the allegedly defamatory statement] be conditionally privileged, the plaintiff must prove malice, actual evil-mindedness, or fail" and explaining that the plaintiff can provide such proof "from an interpretation of the writing, its malignity, or intemperance by showing recklessness in making the charge, pernicious activity in circulating or repeating it, its falsity, the situation and relations of the parties, the facts and circumstances surrounding the publication, and by other evidence appropriate to a charge of bad motives as in other cases"). See also, e.g., John Bruce Lewis & Bruce L. Ottley, New York Times v. Sullivan at 50: Despite Criticism, the Actual Malice Standard Still Provides "Breathing Space" for Communications in the Public Interest, 64 DePaul L. Rev. 1, 23-26 (2014) (noting that because *Coleman*'s definition of "actual malice" was "evil-mindedness," which was consistent with the traditional meaning of that term (i.e., "'spite or ill will'"), "'*Coleman* does not align well with the actual malice rule described in *Sullivan*'") (citation omitted). Indeed, the issue in *Coleman* was not the meaning of "actual malice," which as discussed above, was well settled in early American law; rather, the Kansas Supreme Court was concerned with whether Kansas should adopt a conditional privilege for allegedly defamatory statements about "matters of public concern, public men, and candidates for office." 78 Kan. at 723. Thus, although the term "actual malice" is derived from the use of that phrase in traditional conditional-privilege cases, the constitutional standard did not mirror traditional principles. See *Harte-Hanks*, 491 U.S. at 666 & n.7.

45

after *New York Times*, the United States Supreme Court concluded in *Gertz* that "the state interest in compensating injury to the reputation of private individuals requires that a different rule should obtain with respect to them" and accordingly held: "[S]o long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." 418 U.S. at 343, 347. In response to *Gertz*, this Court abandoned the traditional rule imposing strict liability in defamation cases and held that negligence is the appropriate standard for determining fault in such cases. See *Triangle Publications, Inc. v. Chumley*, 253 Ga. 179, 181-182 (317 SE2d 534) (1984). Thus, when a defendant makes an allegedly defamatory statement about a private-figure plaintiff that does not involve a matter of public concern, he is generally held to a standard of ordinary care as a matter of Georgia law. See *Zeh*, 312 Ga. at 650-651.

In sum, the United States Supreme Court has held that the

First Amendment places limits on state defamation law when the plaintiff is a public official or public figure and when a private-figure plaintiff seeks presumed or punitive damages relating to a defamatory statement about matters of public concern, such that the "actual malice" standard announced in *New York Times* (i.e., knowledge of falsity or reckless disregard for truth) applies in those sorts of cases.[18] But the Court has determined that in all other respects, the states are free to impose their own defamation rules, so long as they do not impose strict liability. Consequently, when a

---

[18] In such cases, we must faithfully apply the *New York Times* standard established by the United States Supreme Court. See *Zeh*, 312 Ga. at 652 n.5. We note, however, that two Justices on that Court have called for reconsideration of *New York Times*. See *Berisha v. Lawson*, ___ U.S. ___, ___ (141 SCt 2424, 2425, 210 LE2d 991) (2021) (Thomas, J., dissenting from the denial of certiorari) (stating that "[t]his Court's pronouncement that the First Amendment requires public figures to establish actual malice bears 'no relation to the text, history, or structure of the Constitution'") (citation omitted); id. at 2429-2430 (Gorsuch, J., dissenting from the denial of certiorari) (noting that "[m]any Members of this Court have raised questions about various aspects of *Sullivan*," and "given the momentous changes in the Nation's media landscape since 1964, I cannot help but think the Court would profit from returning its attention, whether in this case or another, to a field so vital to the 'safe deposit' of our liberties"). See also, e.g., *Blankenship v. NBCUniversal, LLC*, ___ U.S. ___, ___ (144 SCt 5, 217 LE2d 151) (2023) (Thomas, J., concurring in the denial of certiorari) (reiterating that the Court should revisit the "actual malice" standard).

plaintiff is a private figure and does not seek presumed or punitive damages flowing from a defamatory statement about a matter of public concern, the "actual malice" standard in *New York Times* does not apply, and Georgia defamation law controls. It is in these sorts of cases that the Georgia statutes and decisional law about conditional privileges come into play.[19]

(d) *Confusion About "Actual Malice" After* New York Times

Consistent with the legal framework we just recounted, after *New York Times*, the Georgia Court of Appeals properly applied the constitutional "actual malice" standard in some defamation cases brought by public-official or public-figure plaintiffs, but applied

---

[19] Because the issues of whether a plaintiff in a defamation case is a public or private figure and whether he seeks presumed or punitive damages related to a defamatory statement about a matter of public concern determine whether a court should apply federal constitutional law or state law, we emphasize that Georgia courts generally should engage in that inquiry as a threshold matter in defamation cases.

In addition, although not at issue in this case, we note that OCGA § 51-5-7 (9) deems conditionally privileged under Georgia law "[c]omments upon the acts of public men or public women in their public capacity and with reference thereto." But as discussed above, the United States Supreme Court has made clear that in cases involving defamatory statements about public-official and public-figure plaintiffs, states must apply, at a minimum, the constitutional "actual malice" standard announced in *New York Times*.

48

Georgia law—including the statutory requirement that a plaintiff, to defeat a defense of conditional privilege, must prove "private malice" or malice in fact, meaning ill will or an intent to injure—in other defamation cases brought by private-figure plaintiffs.[20] In other cases, however, the Court of Appeals stated—without discussion of the well-settled, state-law rule that a showing of malice in fact is sufficient to overcome a conditional-privilege defense—that a plaintiff could defeat a conditional privilege only by establishing constitutional "actual malice," as that term was defined by the United States Supreme Court in *New York Times*.[21]

---

[20] See, e.g., *Thibadeau v. Crane*, 131 Ga. App. 591, 592-593 (206 SE2d 609) (1974) (applying the constitutional "actual malice" standard in *New York Times* to a defamation claim by a public-official plaintiff); *Savannah Bank & Trust Co. v. Sumner*, 174 Ga. App. 229, 232 (329 SE2d 910) (1985) (holding that the plaintiff could defeat the defendant's conditional-privilege defense by showing "actual malice," meaning that he could introduce proof of "'an actual spite, ill will[,] or desire to injure the person defamed'") (citation omitted).

[21] See, e.g., *Montgomery v. Pacific & Southern Co., Inc.*, 131 Ga. App. 712, 715-717 (206 SE2d 631) (1974) (holding that the plaintiff, a car service station operator, who appeared to be a private figure (although the Court of Appeals conducted no analysis as to that issue), had defeated the defense of conditional privilege because he had shown that "there was a 'reckless disregard of the truth' which is the equivalent of malice," such that the trial court erred by directing a verdict for the defendant) (quoting *Curtis*, 388 U.S. at 170), overruled, as discussed more below, by *Diamond v. American Family*

Then, in 1988—almost 25 years after *New York Times*—the Court of Appeals attempted to clarify its precedent regarding when to apply the constitutional "actual malice" standard set out in *New York Times* and when to apply the statutory standard of private malice under the predecessors to OCGA § 51-5-9. See *Diamond v. American Family Corp.*, 186 Ga. App. 681, 684 (368 SE2d 350) (1988) (overruling *Montgomery v. Pacific & Southern Co., Inc.*, 131 Ga. App. 712 (206 SE2d 631) (1974), and another case to the extent they held "that the qualified privilege for the reporting of matters of public concern may be defeated only by a showing of actual malice"

*Corp.*, 186 Ga. App. 681 (368 SE2d 350) (1988); *Morton v. Stewart*, 153 Ga. App. 636, 638 (266 SE2d 230) (1980) (noting that a public official is required to establish "actual malice" under *New York Times* and that the plaintiff was required to overcome "the conditional privilege that attaches to news reports of proceedings of judicial bodies" and concluding that "'actual malice' is the sine qua non for [the plaintiff] to prevail on either theory"); *Morton v. Gardner*, 155 Ga. App. 600, 604 (271 SE2d 733) (1980) (holding that the plaintiff was a public official but that the allegedly defamatory statement did not relate to his official conduct, such that the rule in *New York Times* did not apply, but nevertheless concluding that the plaintiff was required to prove "actual malice" under *New York Times* to defeat the defendant's showing of conditional privilege); *Sherwood v. Boshears*, 157 Ga. App. 542, 543 (278 SE2d 124) (1981) (holding that a showing of knowledge of falsity or reckless disregard for truth under *New York Times* negates a conditional privilege).

as defined in *New York Times*).[22] And over the next 15 years, it appears that the Court of Appeals generally applied the *New York Times* standard of constitutional actual malice (i.e., knowledge of falsity or reckless disregard for truth) in defamation cases involving public-official and public-figure plaintiffs and the state-law standard of private malice (i.e., ill will or intent to injure) in cases involving whether a defendant's allegedly defamatory statement against a private-figure plaintiff was conditionally privileged under Georgia law.[23]

But in the early 2000s, the Court of Appeals reversed course

---

[22] The other case that the Court of Appeals overruled in *Diamond* was *WSAV-TV, Inc. v. Baxter*, 119 Ga. App. 185 (166 SE2d 416) (1969). That case held that when a defendant has made a prima facie showing of a conditional privilege, "the burden is then upon the plaintiff to establish that the publication was made with actual malice." Id. at 186. But *WSAV-TV* did not mention *New York Times* or its progeny and instead cited a prior version of OCGA § 51-5-9 and cases applying the traditional rule requiring malice in fact to overcome a conditional-privilege defense. See id.

[23] See, e.g., *Williams v. Cook*, 192 Ga. App. 811, 812 (386 SE2d 665) (1989); *Brewer v. Rogers*, 211 Ga. App. 343, 347-348 (439 SE2d 77) (1993); *Purvis v. Ballantine*, 226 Ga. App. 246, 250 (487 SE2d 14) (1997); *Dominy v. Shumpert*, 235 Ga. App. 500, 504-505 (510 SE2d 81) (1998); *Sparks v. Peaster*, 260 Ga. App. 232, 237 (581 SE2d 579) (2003).

and again concluded, as it had in several cases prior to *Diamond*, that a private-figure plaintiff must establish "actual malice" within the meaning of *New York Times* to defeat a state-law conditional privilege, without explanation as to why the constitutional standard would apply in such cases, which involved only matters of Georgia law. See, e.g., *Cooper-Bridges v. Ingle*, 268 Ga. App. 73, 77-78 (601 SE2d 445) (2004) (holding that to defeat a defense of conditional privilege, the plaintiff was required to show "actual malice"—that the defendant "knew that the statements were false or published with reckless disregard of whether they were false or not," citing *Morton v. Gardner*, 155 Ga. App. 600, 604 (271 SE2d 733) (1980), but also noting that "'[m]alice to avoid qualified privilege must be actual and with evil intent'") (citation omitted).[24]

---

[24] See also, e.g., *Rabun v. McCoy*, 273 Ga. App. 311, 316 (615 SE2d 131) (2005) (same, citing *Cooper-Bridges* and *Gardner*), overruled on other grounds by *West v. City of Albany*, 300 Ga. 743 (797 SE2d 809) (2017); *Smith v. Henry*, 276 Ga. App. 831, 832-834 (625 SE2d 93) (2005) (same, citing *Cooper-Bridges*); *Fine v. Communication Trends, Inc.*, 305 Ga. App. 298, 302-305 (699 SE2d 623) (2010) (same, citing *Rabun* and *Smith*); *Murray*, 345 Ga. App. at 287-288 (same, citing *Cooper-Bridges*); *Neff v. McGee*, 346 Ga. App. 522, 525-530 (816 SE2d 486) (2018) (same, citing *Smith*).

Notably, 30 years ago, the United States Court of Appeals for the

The line of Court of Appeals cases applying the constitutional "actual malice" standard to a private-figure plaintiff seeking to defeat a conditional-privilege defense is not grounded in the historical and legal background of OCGA § 51-5-9. Rather, it appears that this line of cases inadvertently imported the *New York Times* "actual malice" standard into OCGA § 51-5-9, without analysis of the limited circumstances in which the United States Supreme Court has said that the standard applies as a matter of United States constitutional law, or of that Court's acknowledgment that the *New York Times* "actual malice" standard is not based on the traditional meaning of "actual malice." And as we explain more below, we therefore conclude that the "actual malice" standard in *New York Times* does not apply in the context of analyzing whether

---

Eleventh Circuit recognized that our Court of Appeals has "over time and without explanation," "engrafted upon OCGA § 51-5-9 the constitutional 'actual malice' standard outlined for public figure defamation cases in *New York Times Co. v. Sullivan.*" *Hammer v. Slater*, 20 F3d 1137, 1141-1142 (11th Cir. 1994). We note, however, that the parties in this case have not pointed to, and we have not found, any cases from this Court that have conflated the constitutional "actual malice" standard and the "private malice" standard, likely because the bulk of appellate defamation cases in Georgia has been decided in the Court of Appeals.

a private-figure plaintiff whose claim is based on defamatory statements that do not involve matters of public concern has overcome a conditional privilege as a matter of Georgia law.

4. *The "Private Malice" Referenced in OCGA § 51-5-9 Is Not Equivalent to the "Actual Malice" Standard the United States Supreme Court Articulated in* New York Times

To recap, we explained above that the first version of OCGA § 51-5-9, which was enacted in 1860, codified the traditional rule that a plaintiff, to overcome a defense of conditional privilege, must show that the defendant's claim that he made an allegedly defamatory statement to promote a legitimate interest is a sham and that instead, he made the statement with ill will toward the plaintiff or with an intent to injure him. Georgia appellate cases consistently applied this rule for 100 years after the text of what is now OCGA § 51-5-9 was enacted. Then, in 1964, the United States Supreme Court held in *New York Times* that the states must apply the constitutional standard of "actual malice"—meaning knowledge of falsity or reckless disregard for truth—when a plaintiff in a

defamation case is a public official or public figure or when he is a private figure seeking presumed or punitive damages related to a defamatory statement about a matter of public concern. But outside of those contexts—such as when a plaintiff is a private figure and does not seek such damages—the "actual malice" standard in *New York Times* does not apply.

In light of the history of OCGA § 51-5-9 (and considering the federal constitutional law on defamation), we conclude that the text of that statute requires a plaintiff, to overcome a conditional privilege, to establish that the defendant used the privilege as a pretense, such that the allegedly defamatory statement was not made for one of the bona fide purposes listed in OCGA § 51-5-7 but was instead made with "private malice," meaning with ill will toward the plaintiff or with an intent to injure him. This understanding of OCGA § 51-5-9 is not altered by *New York Times*, which had no effect on Georgia defamation law in cases brought by private-figure plaintiffs involving allegedly defamatory statements that do not involve matters of public concern. Thus, such Court of

Appeals cases that, after *New York Times*, determined that a plaintiff can overcome a conditional-privilege defense only by establishing the type of constitutional "actual malice" articulated in *New York Times*—meaning knowledge of falsity or reckless disregard for truth—applied the wrong legal standard.[25] We therefore overrule those cases.[26]

---

[25] We note, however, that a showing of knowledge of falsity (one prong of the constitutional "actual malice" standard) may often satisfy the standard of "private malice" under Georgia law because traditionally, a plaintiff could prove private malice by establishing that the defendant knew that his statement was false. See, e.g., Townshend, supra, at § 245; *Jordan*, 91 Ga. App. at 474. But as discussed above, a plaintiff can also prove private malice by establishing that the defendant harbored feelings of ill will toward the plaintiff, such that the private-malice standard is less demanding than the constitutional "actual malice" standard. See, e.g., Townshend, supra, at § 245; *Van Gundy*, 84 Ga. App. at 430.

[26] See *Melton v. Bow*, 145 Ga. App. 272, 273 (243 SE2d 590) (1978); *Stewart*, 153 Ga. App. at 638; *Gardner*, 155 Ga. App. at 604; *Sherwood*, 157 Ga. App. at 543; *Meyer v. Ledford*, 170 Ga. App. 245, 247 (316 SE2d 804) (1984); *Fiske v. Stockton*, 171 Ga. App. 601, 603 (320 SE2d 590) (1984); *Anderson v. Housing Auth. of Atlanta*, 171 Ga. App. 841, 843 (321 SE2d 378) (1984); *DeBerry v. Knowles*, 172 Ga. App. 101, 104 (321 SE2d 824) (1984); *Clayton v. Macon Telegraph Publishing Co.*, 173 Ga. App. 466, 466 (326 SE2d 789) (1985); *Heard v. Neighbor Newspapers, Inc.*, 190 Ga. App. 756, 758 (380 SE2d 279) (1989), reversed on other grounds by *Heard v. Neighbor Newspapers, Inc.*, 259 Ga. 458 (383 SE2d 553) (1989); *Smith v. Vencare, Inc.*, 238 Ga. App. 621, 627 (519 SE2d 735) (1999); *Cooper-Bridges*, 268 Ga. App. at 77; *Rabun*, 273 Ga. App. at 316; *Smith*, 276 Ga. App. at 832-834; *Torrance v. Morris Publishing Group, LLC*, 281 Ga. App. 563, 572 (636 SE2d 740) (2006); *Fine*, 305 Ga. App. at 302-305; *Murray*, 345 Ga. App. at 287-288; *Neff*, 346 Ga. App. at 525-530.

With that, we circle back to the Court of Appeals's determination in this case that Oskouei was required to establish by clear and convincing evidence that Matthews acted with "actual malice," meaning that "Matthews knew that his statements were false or that he made them with a reckless disregard for the truth," to overcome the conditional privilege set forth in OCGA § 51-5-7 (7). *Matthews*, 369 Ga. App. at 575. As we explained above, that is not the standard that applies when a plaintiff seeks to overcome a conditional-privilege defense under Georgia law, unless the plaintiff is a public official or public figure or unless he is a private figure seeking presumed or punitive damages related to a defamatory statement about a matter of public concern, such that the *New York Times* "actual malice" standard would instead apply.[27] When only Georgia law applies, a plaintiff seeking to overcome a conditional-privilege defense must establish by a preponderance of the evidence (the standard that generally applies to civil cases, see OCGA § 24-

---

[27] The parties do not expressly allege that Oskouei is a public figure or that Matthews's allegedly defamatory statements related to a matter of public concern, and the trial court and the Court of Appeals did not address that issue.

14-3) that the defendant made the allegedly defamatory statements with ill will toward the plaintiff or with an intent to injure him. See, e.g., *Lester*, 51 Ga. at 120; *Pearce*, 72 Ga. at 244-246; *Nicholson*, 137 Ga. at 231. Because the Court of Appeals incorrectly imported the constitutional "actual malice" standard into OCGA § 51-5-9 in this case, we vacate the Court of Appeals's opinion and remand the case to that court for further proceedings consistent with this opinion.

*Judgment vacated and case remanded. All the Justices concur, except Peterson, PJ, who concurs except as to footnote 18.*

MCMILLIAN, Justice, concurring.

Although I concur fully in the Court's opinion, I write separately to clarify why I believe we must vacate the Court of Appeals's judgment in this case and remand with direction for the trial court to evaluate Matthews's anti-SLAPP motion under the correct standards, including on the threshold question of whether Georgia defamation law or the federal *New York Times* standard applies.

I agree wholly with the Court's thorough analysis of Georgia defamation law and how the *New York Times* "actual malice" standard has been misapplied to defamation claims that are governed solely by state law. I also agree that the first step in the analysis of whether a plaintiff may prevail on his defamation claims is to determine whether Georgia's defamation law or federal constitutional defamation law, as established under *New York Times*, applies to his claims.[28] See *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 346 (III), 349-350 (IV) (94 SCt 2997, 41 LE2d 789) (1974) (acknowledging "actual malice" standard applies to a private-figure plaintiff when the defamatory statement is about a matter of public concern while recognizing that states may, without imposing strict liability, separately define the standard of liability for defamatory statements that injure the reputation of private individuals and do not involve a matter of public concern); *American Civil Liberties*

---

[28] Accord Maj. Op. at 19-22 (recognizing that the federal constitutional "actual malice" requirement does not apply to defamation cases brought by private-figure plaintiffs regarding statements that do not involve matters of public concern).

*Union v. Zeh*, 312 Ga. 647, 650-51 (1) (b) (864 SE2d 422) (2021).

However, no court, including this Court, has considered or expressly determined whether the statements at issue here are the type that would constitute statements of public concern, such that the *New York Times* actual malice standard would apply. See *Matthews v. Oskouei*, 369 Ga. App. 568, 573-74 (b) (894 SE2d 141) (2023) (addressing Matthews's statements in terms of comments made by counsel pursuant to OCGA § 51-5-7 (7) but without analyzing whether his statements would constitute statements of public concern under *New York Times*). This Court did not do so because of the procedural posture of the case, in which the Court of Appeals analyzed the defamation claim using the *New York Times* standard, and we granted certiorari on the legal question of whether the "actual malice" standard applies to overcome a defense of conditional privilege under OCGA § 51-5-7 (7), without specifically pointing the parties to this threshold issue.[29] The parties and lower

---

[29] The question presented on certiorari was: "To overcome a defense of conditional privilege under OCGA § 51-5-7 (7), must a plaintiff show that the

courts may not have focused on this threshold question because it may not have seemed significant given that the Court of Appeals precedent has, at times, conflated the *New York Times* actual malice standard with Georgia's private malice standard.

Nonetheless, although the Court is correct that the "parties do not expressly allege that Oskouei is a public figure or that Matthews's allegedly defamatory statements related to a matter of public concern," Maj. Op. at 27 n.27, it appears that Matthews made arguments below that could support application of the *New York Times* standard. Matthews asserted in his anti-SLAPP motion that the alleged defamatory statements were a matter of "public interest":

> Oskouei's lawsuit lacks justification because any statements allegedly made by Matthews about Oskouei were necessarily made in connection with Matthews's legal work and/or with matters of public interest, and were thus privileged speech.

Matthews also noted in his motion that he "has twice been called to

---

defendant asserting the privilege acted with 'actual malice' regardless of whether the [plaintiff] is a public figure?"

testify before the Georgia House Judiciary Committee on matters of public interest pertaining to the 'phantom damages' created by lien doctors and their business model." Matthews also argued that the types of "medical billing fraud" at issue in this case "are clearly matters of public interest and reasonable grounds for free speech" and are "directly analogous to the conduct of Martin Shkreli, who was the subject of widespread media coverage."

Thus, it remains an open question of whether the alleged defamatory statements were of public concern, such that the *New York Times* standard could apply. Because no court has yet decided this key threshold issue, the appropriate disposition is to vacate the judgment of the Court of Appeals with direction to remand the case to the trial court for consideration of whether Oskouei has established a reasonable probability of prevailing on his claims, under the standards enunciated by the Court, including the threshold question of whether state defamation law or the *New York*

*Times* standard applies.[30] See, e.g., *Zeh*, 312 Ga. at 676 (5) n.26 (explaining that, while "all public officials may be public figures, even though all public figures are not public officials[,]" that question was not posed on certiorari and leaving it "to the trial court to decide in the first instance on remand whether the ACLU claims that Zeh is a 'public figure plaintiff' as that term is used in OCGA § 9-11-11.1 (b) (2)" (punctuation omitted)).

---

[30] Even without specific direction by the Court, the parties could revisit this issue on remand, and the lower courts would not be precluded by law of the case because neither this Court nor the Court of Appeals has explicitly ruled on this threshold question. See *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 186 n.5 (674 SE2d 894) (2009) (explaining that law of the case doctrine applies only to issues expressly ruled on previously and does not apply to an "implied" ruling on an issue not addressed in the previous decision). See generally OCGA § 9-11-60 (h) ("any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be").

Decided February 18, 2025.

Certiorari to the Court of Appeals of Georgia — 369 Ga. App. 568.

*Robbins Alloy Belinfante Littlefield, Joshua B. Belinfante, Daniel J. Monahan; Heidari Power Law Group, Yasha Heidari, Yennifer S. Delgado, Chenyu Li; Ryan E. Harbin*, for appellant.

*Hedrick Law, L. Bruce Hedrick; Wilson Elser Moskowitz Edelman & Dicker, Parks K. Stone, Michael T. Manfredi, Eleanor G. Jolley; McMickle Kurey & Branch, Scott W. McMickle, Kevin P. Branch*, for appellee.

*Kilpatrick Townsend & Stockton, Thomas M. Clyde, Lesli N. Gaither*, amici curiae.